**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Lester WRIGHT, Defendant-Appellant.**

**No. 78–2875.**

United States Court of Appeals,
Ninth Circuit.

March 14, 1979.

106

Francis J. Diskin, Asst. U.' S. Atty. (argued), Seattle, Wash., for plaintiff-appellee.

Katrina C. Pflaumer (argued), Seattle, Wash., for defendant-appellant.

Before SNEED and ANDERSON, Circuit Judges, and D. WILLIAMS,* District Judge.

SNEED, Circuit Judge:

Appellant Lester Wright appeals from a conviction of one count of distribution of a controlled substance in violation of 21 U.S.C. § 841, and from his sentence thereunder. He attacks his conviction, arguing that the trial court erroneously excluded a jury instruction tendering his theory of defense. In addition, Wright contends that his sentence must be vacated because the sentencing judge relied upon inaccurate information and impermissible inferences in committing him under the Federal Youth Corrections Act, 18 U.S.C. § 5010(b). We affirm.

I.

FACTS.

On January 27, 1978, Wright and one William Tann were arrested in Tann's automobile in which were found heroin and a gun. On March 14, 1978, a grand jury returned a three-count indictment against Wright and Tann: (1) Count I charged conspiracy between the two to distribute heroin; (2) Count II charged distribution of heroin by both defendants; and (3) Count III charged joint possession with intent to distribute the heroin found in the car. At trial and following presentation of the government's case, the district judge granted defense motions for acquittal on the conspiracy counts. As to Tann, the judge also granted motions for acquittal on Count II and mistrial on Count III. After Wright's defense was put on, the jury acquitted him of the joint possession charge (Count III), but found him guilty of distributing heroin (Count II).

The government's witness as to the distribution charge was the alleged distributee. She testified that she had seen Wright in possession of small quantities of heroin, that she had received heroin from him in November 1977, that they used heroin together on occasion, and that he had given it to her for her own sole use as well. In addition, she testified that Wright stated he obtained the heroin from Tann.

Wright, testifying in defense, stated that he had "snorted" heroin with the government's witness only on two occasions. Once he said she gave him money to purchase heroin and he purchased it and brought it back for them to share, and once they shared heroin already in her possession. The district judge refused the following instruction offered by the defendant.

If you find that defendant Wright acquired only a small quantity of heroin in a joint venture with [the alleged distributee] and used it with her, that evidence alone is insufficient to prove that either defendant distributed heroin and you must find them both not guilty of Count II of the Indictment. The statute charged in Count II of the Indictment is not meant to punish joint purchasers and users of a controlled substance.

The judge instead instructed the jury that "distribute" meant "to transfer or deliver a substance either directly or by means of another person."

* Hon. David W. Williams, United States District Judge for the Central District of California, sitting by designation.

After trial, the defendant's case was transferred to a different judge for sentencing. The Probation Department submitted a report which indicated that Wright's association with Tann included heroin activity. Defense counsel submitted a sentencing recommendation suggesting that probation was justified. The sentencing judge also reviewed trial transcripts and grand jury material before sentencing. On August 4, 1978, the sentencing judge committed Wright under the Youth Corrections Act. At the sentencing hearing the judge stated, among other things, that he had had Tann in his own court and that he knew him to be "bad medicine."

## II.

### ISSUES PRESENTED.

Wright raises two issues on appeal. They are:

1. Was it reversible error for the judge to refuse the jury instruction which the defense counsel premised on *United States v. Swiderski*, 548 F.2d 445 (2d Cir. 1977)?

2. Should the sentence imposed be vacated because the sentencing court relied upon inaccurate information or impermissible inferences about the defendant?

Our review leaves us with a strong conviction that no reversible error occurred in the proceedings below.

## III.

### DENIAL OF JURY INSTRUCTION.

■ Wright argues that the denial of the proffered jury instruction improperly denied him the theory of his defense. This court follows the rule that a defendant is "entitled to jury instructions *on a legitimate theory of defense* if there is evidence before the jury to support it." *United States v. Collom*, (9th Cir. 1978) (slip op. 1862 at 1870). *E. g., United States v. Noah*, 475 F.2d 688, 697 (9th Cir.), *cert. denied*, 414 U.S. 821, 94 S.Ct. 119, 38 L.Ed.2d 54 & 1095, 94 S.Ct. 728, 38 L.Ed.2d 553 (1973). Therefore, to constitute error the rejected instruction must

have stated a legitimate defense and evidence supporting the defense must have been before the jury.

Whether Wright's proposed instruction stated the law correctly depends upon the proper interpretation of the term "distribute" in 21 U.S.C. § 841. The Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 et seq., in subsection 841(a)(1) makes it unlawful to "distribute . . . a controlled substance." The word "distribute" is defined as meaning "to deliver," and "deliver" is defined as meaning "the actual, constructive, or attempted transfer of a controlled substance, whether or not there exists an agency relationship." 21 U.S.C. § 802(8) & (11). This court previously has pointed out that 21 U.S.C. § 841(a)(1), part of a cohesive statutory scheme Congress enacted in 1970, eliminated the "procuring agent" defense which under an earlier statute had been a defense for *facilitation of the sale* of narcotics. *United States v. Hernández*, 480 F.2d 1044, 1046 (9th Cir. 1973). Therefore, Wright can draw no comfort from that discredited doctrine.

His proposed instruction in fact rests upon *United States v. Swiderski*, 548 F.2d 445 (2d Cir. 1977). The Second Circuit reversed the convictions of two individuals for possession of cocaine with the intent to distribute it. The court held that a statutory "transfer" could not occur between two individuals in joint possession of a controlled substance simultaneously acquired for their own use. Therefore it was error for the trial judge to deny the jury the opportunity to find that the defendants, who bought the drugs in each other's physical presence, intended merely to share the drugs. The court stated:

Congress' reasoning in providing more severe penalties for commercial trafficking in and distribution of narcotics was that such conduct tends to have the dangerous, unwanted effect of drawing additional participants into the web of drug abuse. For this reason the House Report equated "transactions involving others" and "distribution to others" with the

harsher penalties provided by §§ 841 and 848. Where only individual possession and use is concerned, on the other hand, the Act prescribes lesser penalties and emphasizes rehabilitation of the drug abuser. Similarly, where two individuals simultaneously and jointly acquire possession of a drug for their own use, intending only to share it together, their only crime is personal drug abuse—simple joint possession, without any intent to distribute the drug further. Since both acquire possession from the outset and neither intends to distribute the drug to a third person, neither serves as a link in the chain of distribution. For the purposes of the Act they must therefore be treated as possessors for personal use rather than for further distribution. Their simple joint possession does not pose any of the evils which Congress sought to deter and punish through the more severe penalties provided for those engaged . . . in drug distribution. 548 F.2d at 450.

■ *Swiderski,* however, even if correct is not controlling. Taking the evidence presented in the light most favorable to Wright, *Swiderski* rests on facts different from those on which Wright relies. Stated in its bare essentials, Wright testified that the distributee asked him to procure heroin so that they might use it together; she gave him $20 with which to buy the heroin but did not tell him where to buy it; he left her dwelling and procured the heroin; then he brought the heroin back and they "snorted" it together. Congress in 21 U.S.C. § 841(a)(1) demonstrated its intention to deter individuals from involvement or assistance in drug trafficking. Wright facilitated the transfer of the narcotic; he did not simply "simultaneously and jointly acquire possession of a drug for their [his and another's] own use." His actions exceeded the scope of the rule propounded in *Swiderski;* thus even if it is good law, about which we express no opinion, he was not entitled to the proffered instruction.

Wright seeks to strengthen his *Swiderski* argument by contending that his purchase was a joint venture and that at the point of purchase he and the supposed distributee were in joint possession with an intent to use the heroin. In support he cites *United States v. Cousins,* 427 F.2d 382 (9th Cir. 1970) and *United States v. Marquez,* 462 F.2d 620 (9th Cir. 1972), *cert. denied,* 413 U.S. 921, 93 S.Ct. 3069, 37 L.Ed.2d 1043 (1973). Each of these cases affirmed convictions for possessing stolen goods knowing them to be stolen on a theory of constructive possession. In *Cousins,* we stated: "The circumstances of each case must be examined to determine if there is 'such a nexus or relationship between the defendant and the goods that it is reasonable to treat the extent of the defendant's dominion and control as if it were actual possession.'" 427 F.2d at 384 (citations omitted).

If applicable, *Cousins* suggests the person with whom Wright was to share the heroin may have had constructive possession at the time of purchase. But that, even if so, avails Wright nothing. That the courts for the purposes of defining possession of contraband do not distinguish between actual and constructive possession is irrelevant to the definition of distribution under § 841. Congress intended to prevent individuals from acquiring drugs for whatever purpose on behalf of others and then transferring the drugs to those others. Wright did just that. As the Second Circuit recognized in *Swiderski:* "The agent who delivers to his principal performs a service in increasing the distribution of narcotics. Without the agent's services the principal might never come into possession of the drug." 548 F.2d at 451.

■ The evidence in this case does not support a *Swiderski* charge. This is not a case in which two individuals proceeded together to a place where they simultaneously purchased a controlled substance for their personal use. Here Wright operated as the link between the person with whom he intended to share the heroin and the drug itself. He was not entitled to the instruction he sought. See *United States v. Branch,* 483 F.2d 955 (9th Cir. 1973).

IV.

## SENTENCING.

Relying on *Farrow v. United States,* 580 F.2d 1339 (9th Cir. 1978) (en banc), Wright asserts that the sentencing judge took into account improper and inaccurate information in sentencing. In *Farrow,* a § 2255 proceeding in which the sentence imposed was upheld, we held that a sentence will be vacated on appeal only if the challenged information is (1) false or unreliable, and (2) demonstrably made the basis for the sentence. 580 F.2d at 1359. As in *Farrow,* the defendant's version of the facts in this case was presented both in the presentence report and at the hearing.

■ The district judge on the record determined to commit Wright because of his association with Tann in criminal activity. Sufficient evidence of that association appeared in the record developed at trial. The judge's "bad medicine" remark simply refers to the character of appellant's associates, which is a legitimate sentencing consideration, especially under the Youth Corrections Act. This case does not approach the limits established in *Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1947) or *United States v. Weston,* 448 F.2d 626 (9th Cir. 1971), *cert. denied,* 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972). *See Gelfuso v. Bell,* 590 F.2d 754 (9th Cir. 1978). It is therefore not necessary to vacate the sentence imposed and remand for resentencing.

AFFIRMED.