IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 93-1092
_____

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

VERSUS

RAY DALE SPEER and WILLIAM ROBERT WEEKS, JR.,
Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Texas

_____

(August 22, 1994)

Before KING and SMITH, Circuit Judges, and KAZEN,[1] District Judge.

KAZEN, District Judge:

Defendants, Ray Dale Speer ("Speer") and William Robert Weeks, Jr. ("Weeks"), appeal from their convictions for (1) felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); (2) possession with intent to distribute approximately 30 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1); and (3) carrying or using a firearm, a F.I.E. .32 caliber semiautomatic pistol, during and in relation to the commission of a drug trafficking offense, in violation of 21 U.S.C. § 924(c)(1). Defendants present three

_____

[1] District Judge of the Southern District of Texas, sitting by designation.

common issues for review. They both challenge the trial judge's refusal of a tendered jury instruction on their defense to the cocaine charge, as well as the admission of expert testimony and the sufficiency of the evidence on that same issue. Additionally, Speer appeals the trial judge's excusal of a seated and sworn juror while Weeks appeals the sufficiency of the evidence on his firearm convictions and a sentencing enhancement under 18 U.S.C. § 924(e). We have concluded that none of the issues warrant reversal.

*I.*

*Background*

The following recitation of facts reflects the evidence as viewed in the light most favorable to the jury's verdict. *See United States v. Willis*, 6 F.3d 257, 264 (5th Cir. 1993). Ron Wooten ("Wooten"), an undercover officer with the Tarrant County Narcotics Intelligence Coordination Unit, put out word on the street that he had an ounce of cocaine for sale. On April 14, 1992, Wooten met with paid informant Ray Stovall ("Stovall"), Rebecca Smith ("Smith"), and Karen Lindstrom ("Lindstrom"), an undercover officer with the Fort Worth Drug Task Force to discuss the potential sale of cocaine to Smith and a friend of Smith's, Beth Pierce ("Pierce"). Wooten agreed to meet with Smith, Stovall and Pierce later that day in the Burrus Food Store parking lot in River Oaks, Texas, once the prospective purchasers obtained the money to make the purchase. Stovall went with Smith to Pierce's apartment to check about the money.

Pierce did not have the money at the apartment, so she

2

telephoned Speer and told him to bring it over and come with them to River Oaks. Speer arrived with the money. Meanwhile Weeks came to the apartment but left after a brief stay. Stovall needed to drop off a pickup truck before the trip to River Oaks, so Pierce, Speer and Smith followed him in Pierce's car. Although the four intended to proceed to the Burrus parking lot, they returned to the apartment and left Pierce there because she was feeling ill. In the interim, Weeks had returned to the apartment and, at Speer's request, Weeks drove the group to River Oaks in Pierce's car.

Wooten was waiting in the Burrus parking lot when the group arrived, and Weeks parked the car next to Wooten's pickup. Speer was in the front passenger seat next to Weeks, while Smith and Stovall were in the back seat. Wooten approached and talked to Weeks through the driver's window. During the conversation, he observed a handgun under Speer's inner right thigh. When Wooten asked about the presence of the "heat," Weeks volunteered that it was "there to assure that [Wooten] was not going to rip him off." Wooten then asked Weeks to come to the back of Wooten's pickup, where they both leaned into the bed of the truck over the top of the tailgate. Wooten produced the cocaine and Weeks attempted to weigh it, without success, on scales he had brought with him. After being assured by Wooten that the cocaine would "weigh heavy," Weeks gave Wooten the money and took the cocaine. Wooten gave the arrest signal. Moments later, Weeks was arrested against the fence at the rear of the pickup. Speer and Smith were arrested after being pulled out of the car. The gun, scales and cocaine were

3

found in the car.

## II.

### *Jury Charge*

Defendants Weeks and Speer were convicted of possessing cocaine with the intent to distribute under 21 U.S.C. §841(a)(1) and 18 U.S.C. §2.  Both Defendants appeal the trial judge's omission of the following tendered jury charge on their defense:

> If you find that Beth Pierce, Rebecca Smith, Ray Speer and/or William Weeks, Jr. acted in concert, that is jointly, with one another in the purchasing of the cocaine alleged in the indictment, and that the cocaine was for their group without further distribution purposes, you must find the defendants not guilty of possession of cocaine with the intent to distribute.

We review the charge omission for abuse of discretion. *United States v. Correa-Ventura*, 6 F.3d 1070, 1076 (5th Cir. 1993).  The trial court is given wide latitude "in determining what instructions are merited by the evidence presented." *Id*.  However, where the court "refuse[s] a charge on a defense theory for which there is an evidentiary foundation and which, if believed by the jury, would be legally sufficient to render the accused innocent, this court presumes that the lower court has abused its discretion." *Id*.

Defendants rely on the case of *United States v. Swiderski*, 548 F.2d 445 (2d Cir. 1977), for the proposition that if persons are acting "in concert" to obtain drugs for their own use, they cannot be guilty of possession with intent to distribute.  The *Swiderski* court expressly limited its holding "to the passing of a drug between joint possessors who simultaneously acquired possession at

4

the outset for their own use." *Id*. at 450-51. This Circuit has never adopted the *Swiderski* doctrine nor have we found that any other circuit has done so. In *United States v. Young*, 655 F.2d 624 (5th Cir. 1981), we found *Swiderski* inapplicable to a defendant who, while negotiating the sale of cocaine, was also sampling it. *Id*. at 627. In *United States v. Pool*, 660 F.2d 547 (5th Cir. 1981), without mentioning *Swiderski* by name, we observed that the statutorily prohibited distribution of drugs may, "in appropriate circumstances," refer to the distribution of a controlled substance from one conspirator to another. *Id*. at 561.

In a factual situation very similar to the instant case, the Ninth Circuit declined to follow *Swiderski*. *See United States v. Wright*, 593 F.2d 105, 108 (9th Cir. 1979). There the defendant was given money by a friend and asked to procure heroin so that the two might use it together. The defendant left the friend's dwelling, procured the heroin, and returned to the friend, whereupon they "snorted" it together. *Id*. Expressly without endorsing *Swiderski*, the Ninth Circuit found it inapplicable because the two users in question had not purchased the substance simultaneously. Instead the defendant "operated as the link between the person with whom he intended to share the heroin and the drug itself." *Id*. The *Wright* court noted this language from *Swiderski* itself: "The agent who delivers to his principal performs a service in increasing the distribution of narcotics. Without the agent's services the principal might never come into possession of the drug." *Id.,* quoting *Swidersk*i, 548 F.2d at 541.

5

We also need not pass on the validity of the *Swiderski* doctrine because, just as in *Wright*, the doctrine does not apply to the facts of this case. The evidence here shows that only Weeks and perhaps Speer and Smith, could be said to have "simultaneously" acquired possession of the cocaine. It is undisputed that at least some of the cocaine was intended by the trio to be subsequently distributed to Pierce, who was not at or near the scene of the transaction. Accordingly the trial court did not abuse its discretion in declining to give the proffered instruction.

## III.

### Expert Testimony

Defendants contend that the trial court erred in admitting the expert testimony of DEA Agent Lunt ("Lunt"), because his testimony exceeded the limitation of Fed.R.Evid. 704(b)[2] or alternatively, that his testimony was an impermissible use of "profile" evidence as substantive evidence of guilt. "We review a trial judge's admission of evidence under an abuse of discretion standard." *United States v. Williams*, 957 F.2d 1238, 1240-41 (5th Cir. 1992).

Agent Lunt is a twenty-year-plus veteran of the DEA who has been involved in several hundred drug arrests involving both large and small amounts of drugs. He was not involved in the arrest of

---

[2] Rule 704(b) states:
> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

6

the Defendants.  The following are excerpts from Lunt's direct examination, which the court allowed over both defense counsels' objections:

> Government:  Agent Lunt, pursuant to the testimony in this case that individuals have taken possession of 30 grams of cocaine, now, from that, do you have an opinion as to what a person being in possession of cocaine would be consistent with or not consistent with?
>
> . . .
>
> Lunt:  It is my opinion that a person in possession of 30 grams of cocaine is consistent with narcotic trafficking. In my experience, it is not consistent that a person that would purchase 30 grams of cocaine would purchase that for his own personal use.
>
> . . .
>
> Government:  Agent Lunt, in this case there's been testimony that during the buy in which the defendants bought 30 grams of cocaine from an undercover officer, one of the defendants pulled out a scale that weighs in grams.  Pursuant to your expertise, do you have an opinion regarding what that would be consistent with, that person pulling out scales and buying a weight [sic] in 30 grams?
>
> . . .
>
> Lunt:  That possession of scales is consistent with narcotic trafficking.
>
> . . .
>
> Lunt:  From my experience, I think it would be inconsistent for a user to carry a scale around.

Following these responses, Lunt explained the grounds for these opinions, describing in some detail his previous experience with drug arrests.

The benchmark case involving Rule 704(b) is *United States v. Dotson*, 817 F.2d 1127 (5th Cir. 1987), *aff'd in pertinent part on reh'g*, 821 F.2d 1034 (1987), which involved a tax evasion charge. In *Dotson*, a panel of this Court found that the district court did not abuse its discretion in permitting the following expert testimony:

> In 1983, again, [Dotson's net worth] increased again

7

> forty thousand dollars, almost the same amount it did in 1981 through the period, so they are consecutive increases, which lead me to believe that Mr. Dotson's net worth and/or his equity was increasing through the period. This is indicative, and based on my experience shows to me, that he willfully and intentionally increased his income knowing full well that he had not reported the taxes due thereon.

*Id*. at 1132. The *Dotson* court acknowledged that the second quoted sentence was on the "borderline" between a forbidden opinion on the "ultimate legal issue" and a mere explanation of the expert's analysis of facts which would tend to support a jury finding on the ultimate issue. *Id*. The court found it noteworthy that "the focus of the government's questions was on facts that might support the jury's acceptance of an inference of intent... [and] the responses of the expert were also focused on the evidence, rather than addressing the ultimate issue forbidden by rule 704." *Id*. The court also considered that the appellant did not renew an earlier objection when the questionable statement was made. *Id*. It concluded that, "viewed in the context of that otherwise straightforward portion of [the expert's] examination," an interpretation of the sentence in favor of the government was more reasonable. *Id*.

This Court has since cited *Dotson* for the proposition that Rule 704(b) is not strictly construed and prohibits only a direct statement of the defendant's intent. *United States v. Triplett*, 922 F.2d 1174, 1182 (5th Cir.), *cert. denied*, 500 U.S. 945, 111 S.Ct. 2245, 114 L.Ed.2d 486 (1991); *United States v. Masat*, 896 F.2d 88, 93 (5th Cir 1990). Similarly, in *United States v. Moore*, 997 F.2d 55, 57-58 (5th Cir. 1993), without expressly mentioning

Rule 704(b), we upheld the testimony of an expert who "never testified explicitly as to the defendants' intent or state of mind."

Agent Lunt's statements in this case do not cross the "borderline" defined in *Dotson*. We conclude that his testimony can more accurately be characterized as an analysis of the evidence in the light of his special knowledge as an expert in the area of narcotics trafficking. The district court did not abuse its discretion in admitting this testimony.[3]

## IV.

### *Excusal of Juror*

Defendant Speer contends that the record lacks factual support for the trial judge's decision to excuse a seated and sworn juror. "[I]t is within the trial judge's sound discretion to remove a juror whenever the judge becomes convinced that the juror's abilities to perform his duties become impaired." *United States v. Huntress*, 956 F.2d 1309, 1312 (5th Cir. 1992), *cert. denied*, __ U.S. __, 113 S.Ct. 2330, 124 L.Ed.2d 243 (1993), *citing United States v. Dominguez*, 615 F.2d 1093, 1095 (5th Cir. 1980). This Court will not disturb the trial judge's decision unless there is

---

[3] We also disagree that Lunt's testimony was an impermissible use of profile evidence. Profile evidence is "a compilation of characteristics which aid law enforcement officials in identifying persons who might be trafficking in illegal narcotics." *Williams*, 957 F.2d at 1242. Lunt explained the meaning of physical evidence--cocaine and scales--found at the scene of the transaction. There is no issue of identity here. *See, e.g., United States v. Robinson*, 978 F.2d 1554, 1564 (10th Cir. 1992), *cert. denied,* _____ U.S. ____, 113 S.Ct. 1855, 123 L.Ed.2d 478 (1993) (discussion of profile evidence inappropriate because testimony related to direct evidence).

prejudice to the defendant or another party. *Huntress*, 956 F.2d at 1312.

Before the commencement of trial in this case, seated and sworn juror Yu-Mei Corley ("Corley") informed the court that she had a scheduling conflict the following day. When the district judge questioned her regarding the nature of the conflict, Corley first responded that she thought "they wouldn't pick on me because of my English problem, and plus I have appointment tomorrow." After questioning Corley at length, neither the judge nor any of the three attorneys present could discern the purpose of her appointment.[4] When asked if she had trouble communicating in English, Corley stated "I understand but sometimes they have to repeat two or three times and make it more understand." She also stated that she had to repeat herself to be understood by others. Over Speer's objection, the judge excused Corley because he believed that the other jurors would not be able to communicate with her and that she "probably would detract from [the jury process] by causing difficulty in the deliberations." The judge replaced Corley with a duly selected alternate juror. The record adequately supports the judge's determination that Corley's ability to perform her duties as a juror were impaired by her inability to understand or communicate effectively in English. Accordingly, we find no abuse of discretion.

---

[4] Speer's attorney conceded that he could not understand Corley's explanation about her conflicting appointment, but nevertheless argued that Corley could understand English and that the "other jurors can be patient enough to make sure that she has an independent voice in this matter."

10

*V.*

*Sufficiency of Evidence*

"In reviewing a verdict challenged on the sufficiency of the evidence, this Court views the evidence, whether direct or circumstantial, and all reasonable inferences drawn from the evidence, in the light most favorable to the jury's verdict...[to] determine whether `a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt'."  *Willis*, 6 F.3d at 264 (citations omitted).

*A. § 841(a)(1) Convictions*

Both Defendants challenge the sufficiency of the evidence underlying their convictions for possession of cocaine with intent to distribute.  Weeks specifically challenges the possession element of the offense.  Pointing to the fact that the cocaine was ultimately found in the car, Weeks argues that he could not have been in possession of it.  Based on evidence that the arrests occurred quickly and that he was found against a fence where the cars were parked, he maintains that it would have been a physical impossibility for him to have received the cocaine and place it in the Pierce car before the arrest.  He suggests that officer Wooten never gave him the cocaine but instead planted it in the car.  On the other hand, Wooten unequivocally testified that he gave the cocaine to Weeks in exchange for money.  He also testified that he and Weeks were standing between the two cars when the arrest signal was first given.  The various testimonies describing the time lapse

11

between the arrest signal and the arrests were obviously only estimations. The jury was free to believe Wooten's testimony and could have concluded from Weeks' own proximity to the car that he was the person who thereafter placed, or tossed, the cocaine inside. The evidence was sufficient to support a finding that Weeks had actual possession of the cocaine.

Both defendants challenge the sufficiency of the evidence on the intent-to-distribute element. While conceding that at least some of the cocaine was intended for distribution to Both Pierce, the defendants argue that such distribution would be insufficient as a matter of law under the *Swiderski* doctrine. For reasons discussed in Part II, *supra*, we reject that argument. The defendants also contend that the opinion testimony of Agent Lunt concerning a possible wider distribution plan was legally insufficient for reasons we have discussed and also rejected in Part III, *supra*. We conclude that the evidence was sufficient to sustain the convictions of both defendants for possession with intent to distribute cocaine.

### B. Weeks' § 922(g)(1) Conviction

Defendant Weeks challenges the sufficiency of the evidence that, as a felon, he knowingly possessed a firearm, observing that he did not own the vehicle in which the weapon was found, he was not present when Speer obtained the weapon and had no access or control over the weapon or over Speer, who actually possessed the gun. Knowing possession of the firearm is an essential element for conviction under §922(g)(1). *United States v. Murray*, 988 F.2d

12

518, 521 (5th Cir. 1993). Possession may be actual or constructive. *United States v. Perez*, 897 F.2d 751, 754 (5th Cir. 1990), *cert. denied*, 498 U.S. 865, 111 S.Ct. 177, 112 L.Ed.2d 141 (1990). Constructive possession is the "exercise of, or the power or right to exercise dominion and control over the item at issue and may be shown by dominion over the vehicle in which the item is located." *Id.; see United States v. Orozco*, 715 F.2d 158, 161 (5th Cir. 1983)(constructive possession of weapon located in trunk where defendant-passenger did not own vehicle, but had kept it at his home).

We recently upheld a jury's finding of constructive possession of a firearm by a felon who was the driver of a vehicle, where the firearm was found under the driver's seat, and the defendant had matching ammunition on his person. *United States v. Prudhome*, 13 F.3d 147, 149 (5th Cir.) *cert. denied*, ___ U.S. ___, 114 S.Ct. 1866, 128 L.Ed.2d 487 (1994). Here, defendant Weeks was the driver of a vehicle in which the front-seat passenger was in visible possession of a firearm. When undercover agent Wooten questioned the presence of the firearm, Weeks himself responded that it was in the vehicle so that he would not be "ripped off." We conclude that this is sufficient evidence that Weeks was in constructive possession of the weapon in violation of § 922(g)(1).

### C. *Weeks' § 924(c) Conviction*

Under this section, the Government was required to prove 1) that Weeks committed the drug-trafficking crime of possession with the intent to distribute cocaine and, 2) that he knowingly used or

13

carried the firearm, 3) during and in relation to that crime. *See Willis*, 6 F.3d at 264. Actual possession or use of the firearm is not necessary; it need only have been "available to provide protection to the defendant in connection with his engagement in drug trafficking." *Id. citing United States v. Mora*, 994 F.2d 1129, 1140-41 (5th Cir.) *cert. denied*, ___ U.S. ___, 114 S.Ct. 417, 126 L.Ed.2d 363 (1993).

We have already found the evidence sufficient to prove that Weeks possessed cocaine with intent to distribute. However, Weeks disputes the sufficiency of the evidence that he knowingly used or carried the firearm. The "carrying" requirement of Section 924(c) is met where a defendant operates a vehicle knowing the firearm is in the car. *United States v. Ruiz*, 986 F.2d 905, 910 (5th Cir.) *cert. denied*, ___ U.S. ___, 114 S.Ct. 145, 126 L.Ed.2d 107 (1993); *United States v. Pineda-Ortuno*, 952 F.2d 98, 104 (5th Cir.), *cert. denied*, __ U.S. __, 112 S.Ct. 1990, 118 L.Ed.2d 587 (1992). Weeks' response to the undercover agent's question regarding the purpose of the weapon supports a finding that he knew that the weapon was in the vehicle when he operated it, therefore "carrying" the weapon under *Ruiz*.

Weeks next disputes that there is sufficient evidence of a relationship between the firearm and the drug trafficking crime, apparently because the firearm was in the vehicle while the transaction took place outside. We have previously held that a reasonable jury could conclude that a shotgun, displayed in the rear window of a pickup truck used to deliver marijuana, served to

14

protect the defendant "in the course of distributing the marihuana." *United States v. Coburn*, 876 F.2d 372, 375 (5th Cir. 1989). Here, the visibility of the firearm, as well as Weeks' statement about the purpose of the weapon, establishes that it was intended to serve as protection in relation to the drug trafficking offense. Accordingly, we find that there was sufficient evidence in the record to sustain Weeks' conviction on 924(c).

## *VI.*

### *Enhancement of Weeks' Sentence*

Defendant Weeks appeals the enhancement of his sentence under 18 U.S.C. §924(e). We review the sufficiency of proof of prior convictions *de novo*. *United States v. Martinez-Cortez*, 988 F.2d 1408, 1410 (5th Cir.) *cert. denied*, ___ U.S. ___, 114 S.Ct. 605, 126 L.Ed.2d 570 (1993). There is no dispute that Weeks has numerous prior felony convictions:  1978 in Georgia (burglary), 1982 in Matagorda County, Texas (burglary of habitation); 1988 in Houston (robbery); 1988 in Montgomery County, Texas (burglary of habitation); 1988 in Houston (burglary of a building). Contrary to Weeks' argument, burglary is a crime of violence for purposes of § 924(e). *United States v. Blankenship*, 923 F.2d 1110, 1118 (5th Cir.) *cert. denied*, 500 U.S. 954, 111 S.Ct. 2262, 114 L.Ed.2d 714 (1991). Weeks also appears to argue that his burglary convictions should be lumped together because they should be considered "one continuous course of criminal conduct." This position is also contrary to Fifth Circuit precedent. In *U.S. v. Washington*, 898 F.2d 439, 440 (5th Cir.), *cert. denied*, 498 U.S. 842, 111 S.Ct.

15

122, 112 L.Ed.2d 91 (1990), the activities underlying the prior convictions were committed within a few hours of each other, at the same location and against the same victim. We held that because the defendant "successfully completed" and "safely escaped" the first robbery, with an intervening period devoid of criminal activity before committing the second robbery, the convictions were based on distinct criminal episodes. *Id*. at 442. The incidents underlying Weeks' various convictions are months, days and even years apart. We conclude that the district court properly counted each of Weeks' prior convictions separately.

For the foregoing reasons, Weeks' and Speer's convictions and Weeks' sentence are AFFIRMED.