**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

No. 98-50054

---

UNITED STATES OF AMERICA,

Plaintiff- Appellee,

versus

CEDRIC TERRANCE JONES,
SEAN TERENCE JONES, also known as
SEAN TERRANCE JONES;  THOMAS JOHNNY EASTON

Defendants-Appellants.

---

Appeals from the United States District Court
for the Western District of Texas
(W-96-CR-111-2)

---

April 15, 1999

Before WISDOM, STEWART,  and DENNIS, Circuit Judges.

PER CURIAM:[*]

Cedric Jones, Sean Terence Jones, also known as Sean Terrance Jones (hereinafter "Sean Jones"), and Thomas Johnny Easton appeal their convictions on a sundry of drug related charges. After careful review, we affirm.

I.

Cedric Terrance Jones, Sean Jones and Thomas Johnny Easton were convicted of conspiracy to possess with intent to distribute cocaine or "crack cocaine", a Schedule II Narcotic Drug Controlled Substance, from 1993 through 1996 in violation of 21 U.S.C §§ 841(a)(1) and 846.

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR R. 47.5.4.

Easton was also found guilty of possession with intent to distribute a quantity of cocaine base or "crack cocaine," a Schedule II Narcotic Drug Controlled Substance, on July 16, 1996 in violation of § 841(a)(1).[1]  These charges stem from the government's investigation of each of the above appellants and persons associated with them.

## II.

## A.

First, Cedric Jones alleges that the prosecutor used perjured testimony when it allowed Rondell Massie to testify to the quantity of crack cocaine he purchased from Cedric Jones in contradiction to a previous statement during debriefing.  A prosecutor denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected. See Giglio v. United States, 405 U.S. 150, 154 (1972); Napue v. Illinois, 360 U.S. 264, 269 (1959); Creel v. Johnson, 162 F.3d 385, 390 (5th Cir. 1998).  The defendant must show that (1) the testimony was false; (2) the prosecution knew it was false; and (3) the testimony was material. See Boyle v. Johnson, 93 F.3d 180, 186 (5th Cir. 1996);  Kirkpatrick v. Whitley, 992 F.2d 491, 497 (5th Cir. 1993).  This tests presents a mixed question of law and fact.  The court reviews the underlying facts for clear error and the conclusions from the facts de novo. See  Crell, 162 F.3d at 391(citing Ornelas v. United States, 517 U.S. 690, 699 (1996); United States v. O'Keffe, 128 F.3d 885, 894 (5th Cir. 1997).

This court has previously held that presentation of a witness who contradicts his prior testimony "is not to be confused with eliciting perjury."  United States v. Holladay, 566 F.2d 1018, 1019 (5th Cir.) cert denied, 439 U.S. 831 (1978).  Accordingly, this claim must fail.

Second, Cedric Jones challenges the admission of audio tapes.  Admission of tape recordings falls within the sound discretion of the district court.  United States v. Thompson, 130 F.3d 676, 683 (5th Cir. 1997) cert. denied 118 S.Ct. 2307 (1998).  We reverse a decision to admit tape recordings

---

[1]Additional counts were severed from the case and are not relevant to this appeal.

only if the trial court abused its discretion as indicated by relying on an incorrect view of the law or clearly erroneous factual findings.  See id.; see also, United States v. Buchanan, 70 F.3d 818, 827 (5th Cir.) cert denied, 477 U.S. 906 (1986).  As we explained in Thompson, 130 F.3d at 683 (5th Cir. 1997), tape recordings are admissible in a criminal trial if they are reliable.  The government must establish that the tape recordings are accurate, authentic and trustworthy.  See id. (citing United States v. Carbone, 798 F.2d 21, 24 (1st Cir. 1986).

Generally, this burden requires the government to demonstrate (1) the operator's competency, (2) the fidelity of the recording equipment, (3) the absence of material alterations, and (4) the identification of relevant sounds or voices.  See Buchanan, 70 F.3d at 827 (5th Cir. 1995)(citing United States v. Biggins, 551 F.2d 64 (5th Cir. 1977)).  Of course, upon such a showing, the party challenging the recordings bears the burden of demonstrating that the tapes are inaccurate.  See Thompson, 130 F.3d at 683. Overall, "[t]he district court's discretion is not to be sacrificed to a formalistic adherence to the standard we establish."  Biggins, 551 F.2d 67.  Therefore, the district court may decline to adhere to this standard when it is satisfied that "the recording accurately reproduces the auditory experience."  United States v. Stone, 960 F.2d 426, 436 (5th Cir. 1992).

Cedric Jones's challenge to the admissibility of tapes invites this court to adopt a formulaic approach in applying the Biggins factors.  We decline.  Cedric Jones's proffered reasons for preventing admission of the tapes fail to show that the tape recordings are inaccurate.  Similarly, Cedric Jones has not shown an abuse of discretion on the part of the trial judge.  Cedric Jones would have had the jury listen to 45 hours of tapes as opposed to the composite offered by the government.  At trial, Cedric Jones could have impeached the recordings once they were admitted into evidence yet failed to do so.  See Thompson, 130 F.3d at 683.  We find no basis for relief in this claim.

We apply a similar legal standard in considering Cedric Jones's third challenge, the admission of transcripts.  See Thompson, 130 F.3d at 683.  Cedric Jones's complaint in this regard is without merit.  Cedric Jones has failed to show that the transcripts were materially altered or substantively inaccurate.    Instead, Cedric Jones highlights minor inaccuracies or inconsistencies which do not

significantly undermine the bountiful evidence supporting his guilt. Moreover, Cedric Jones has failed to show how the instruction to the jury failed to remedy any inaccuracies.[2]

Fourth, Cedric Jones challenges the district court's denial of an evidentiary hearing on his motion to correct the record on appeal. A defendant must allege sufficient facts which, if proven, would justify belief in order to warrant an evidentiary hearing. See United States v. Harrelson, 705 F.2d 733, 737 (5th Cir. 1983); United States v. Smith, 546 F.2d 1275 (1977). Neither general nor conclusive assertions, founded upon mere suspicion or conjecture, will suffice. See Harrelson, 705 F.3d at 737 (internal citations omitted). Therefore, the "[f]actual allegations set forth in the defendant's motion, including any accompanying affidavits, must be sufficiently definite, specific, detailed, and non-conjectural, to enable the court to conclude that a substantial claim is presented." Id. (internal quotations omitted).

Cedric Jones opines that the transcript of Case Agent Jack Chapman's testimony has been altered. At trial, Cedric Jones recollects Agent Chapman as responding, "No" when asked whether he believed Cedric Jones sold crack cocaine hand-to-hand.[3] Cedric Jones does not have an adequate basis for an evidentiary hearing. He fails to offer a basis for his recollection of Agent Chapman's statements at trial. His affidavit, without additional evidence or information, is insufficient. Cedric Jones has not produced any information bearing upon a collaboration between the court reporter and the government to alter the trial transcript. Moreover, there is nothing inherently conflicting about Agent Chapman's testimony because it is conceivable that Cedric Jones trusted Steven Richardson

---

[2]The jury was instructed:
    please clearly understand that if you hear something that is different from what you read in the transcript, then what you hear is what the evidence is and not what that transcript suggests. That was made by an ordinary person, not a professional stenographer, and they likely have no more experience in doing that than you would.
9 Record 698. On another occasion the judge directed the jury to disregard a portion of the transcript which purported to transcribe a conversation not found on the composite tape.

[3]According to the transcript, however, Agent Chapman qualifies his response explaining, "Due to the content in the conversation, I fully believed he [Richardson] purchased from Cedric Jones."9 Record 628.

enough to engage in a hand-to-hand sale.

Finally, Cedric Jones accuses the government of witness coaching during the trial.[4]  We review a claim of prosecutorial misconduct for reversible error.  See United States v. Castillo, 77 F.3d 1480, 1497 (5th Cir. 1996).  We seek to determine whether the alleged misconduct casts serious doubt upon the correctness of the jury's verdict.  See id.  "For prosecutorial misconduct in the form of improper comment or questioning to represent reversible error, it generally must be so pronounced and persistent that it permeates the entire atmosphere of the trial."  Id. (citing United States v. Iredia, 866 F.2d 114, 117 (5th Cir.), cert denied, 492 U.S. 921 (1989)).  A defendant must show prejudice to his ability to receive a fair trial before charges will be dismissed for alleged government misconduct.  See  United States v. Johnson, 68 F.3d 899, 902 (5th Cir. 1995).

Cedric Jones has not satisfied the burden of showing prosecutorial misconduct or any prejudice from the attendant conduct.  The behavior ceased upon the judge's immediate admonition.  Moreover, Pamela Washington explained on cross-examination that Agent Chapman had not been giving her reassurances.  She affirmed the veracity of her testimony and defended it against any notion that Agent Chapman was directing her responses.  Nothing in this conduct indicates impropriety on the part of the government or Agent Chapman.  Additionally, there is no indication that the proceedings were in any way compromised by Chapman's alleged behavior.

Finding no basis for relief, we affirm Cedric Jones's conviction.

B.

Sean Jones raises two issues for our review: (1) the existence of a material variance between the conspiracy charged in the indictment and the conspiracy proven a t trial; and (2) the sufficiency of the evidence in support of his conspiracy conviction.  We shall consider each in turn.

In order to prevail on a material variance claim, a defendant must demonstrate the existence

---

[4]Cedric Jones contends that Case Agent Jack Chapman coached witness Pamela Washington during her testimony by "nods of the head."  Cedric Jones's trial counsel complained.  The district judge held a bench conference and advised the government, "Tell him not to do it anymore."

of a variance and that the variance affected his substantial rights.  See  United States v. Ramirez, 145 F.3d 345, 351 (5th Cir. 1998); United States v. Davis, 132 F.3d 1092, 1095 (5th Cir. 1998); United States v. Faulkner, 17 F.3d 745, 762 (5th Cir.), cert denied, 513 U.S. 870 (1994).  Otherwise, the variance is reversible error.  See  Kotteakos v. United States, 328 U.S. 750 (1946).  Nevertheless, where an "indictment alleges the conspiracy count as a single conspiracy, but the government proves multiple conspiracies and a defendant's involvement in at least one of them, then clearly there is no variance affecting the defendant's substantial rights."  Davis, 132 F.3d at 1095.

Under the factors articulated in United States v. Marable, 578 F.2d 151, 154 (5th Cir. 1978), this court determines whether the record demonstrates one or multiple conspiracies.  These five factors include: (1) the time frames during which the alleged conspiracies occurred; (2) the extent to which the same persons were involved and the nature of their involvement; (3) whether statutory offenses charged in the indictments were the same; (4) whether the nature and scope of the defendants' activities charged in connection with each alleged conspiracy were repetitive and continuous; and (5) whether the locations where the events alleged as a part of each conspiracy took place were the same.  Requiring the government to precisely allege the conspiracy it intends to prove ensures that the indictment notifies the defendant adequately to permit him to prepare his defense and does not leave the defendant vulnerable to a later prosecution because of failure to define the offense with particularity.  See  United States v. Richerson, 833 F.2d 1147, 1155 (5th Cir. 1987).

Our recent decision in Davis disposes of this issue.  Even if the government alleged one conspiracy and proved multiple conspiracies, it would only have to show  Sean Jones's involvement in at least one of them.  Substantial evidence tends to indicate his involvement in the conspiracy to distribute crack cocaine even though all of the co-conspirators may not have been aware of his specific role.  Moreover, Sean Jones cannot show prejudice because sufficient evidence revealed his participation in at least one conspiracy in which he negotiated selling crack cocaine for Cedric Jones, received payments for Cedric Jones and sold crack cocaine belonging to Cedric Jones.  These acts place him on common ground with others in the conspiracy who engaged in similar behavior.

6

Sean Jones also challenges the sufficiency of the evidence. Our review of the sufficiency of the evidence following a conviction is narrow. See United States v. Westbrook, 119 F.3d 1176, 1189 (5th Cir. 1997). We resolve a claim of insufficient evidence by examining the evidence, together with all credibility choices and reasonable inferences, in the light most favorable to the government. See id. We will uphold a verdict when we find that any reasonable trier of fact could have found that the evidence established guilt beyond a reasonable doubt. See id. However, the evidence need not exclude every possible hypothesis of innocence. See id. We apply a narrow review to the sufficiency of the evidence following a conviction.

The essence of a conspiracy is an unlawful agreement. See Iannelli v. United States, 420 U.S. 770 (1975). The conspirator must knowingly agree to join at least one other person to bring about a common goal. See United States v. Perez, 489 F.2d 51, 61 (5th Cir. 1973). As we explained in United States v. Harbin, 601 F.2d 773, 781 (5th Cir. 1979), "[t]here must be proof beyond a reasonable doubt that a conspiracy existed, that [the alleged] participant knew of it, and that with this knowledge, he voluntarily became a part of it." Since there is rarely any direct evidence of an agreement to join a criminal conspiracy, the defendant's assent can be inferred from acts which furthered the conspiracy's purpose. Westbrook, 119 F.3d at 1189.

We find abundant evidence linking Sean Jones to Cedric Jones and Rondell Massie.[5] Considering the evidence in the light most favorable to the government, we find that Sean Jones: (1) made two deliveries of crack cocaine to Steven Richardson who was working on behalf of the police's investigation in Austin, TX; (2) traveled to Biloxi, MS with Rondell Massie to sell crack cocaine with an implicit understanding that the profits would be returned to Cedric Jones; (3) initiated

---

[5]In April 1996, Rondell Massie traveled to Biloxi, Mississippi at the behest of Cedric Jones with Sean Jones to make money selling crack cocaine. Sean Jones and Rondell Massie traveled with the 252 grams of cocaine powder they received from Cedric Jones. At a Motel 6 in Biloxi, Rondell Massie converted the 252 grams of powder cocaine to crack cocaine. During this time, Sean Jones left the room but returned periodically. Because "somebody got busted or in trouble" Sean Jones and Rondell departed Mississippi. Sean Jones turned over cash proceeds from the sale of crack cocaine to Rondell Massie who retained $600 and forwarded the remainder to Cedric Jones.

7

contact with Richardson; (4) negotiated drug deals and turned over finalization of the transaction to Cedric Jones; (5) arranged the payment by wire of $20 for Cedric Jones' crack cocaine. The evidence below demonstrates that Sean Jones was involved in the conspiracy from at least from April 1996, when he traveled to Biloxi, Mississippi and continued through August 30, 1996 and September 22, 1996 when he made two separate deliveries of four and five ounces of crack cocaine. Sean Jones does little to rebut the abundance of evidence linking him to Cedric Jones, Massie and the conspiracy.

The absence of merit in Sean Jones's claims lead us to affirm his conviction.

C.

Thomas Easton challenges his conviction based on (1) the search of his vehicle; (2) the existence of a fatal variance between crack cocaine and the drugs found in his vehicle; (3) testimony in the hope of leniency; (4) his entitlement to a limiting instruction. Having conducted our review, we find no basis to overturn Easton's conviction.

To search a vehicle, the government must prove, by a preponderance of the evidence, that consent to search was freely and voluntarily given. See e.g., United States v. Tompkins, 130 F.3d 117, 121 (5th Cir. 1997). Voluntariness is determined from the totality of circumstances. See, id. Relevant factors for determining voluntariness include: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found. See United States v. Tompkins, 130 F.3d 117, 121 (5th Cir. 1997). We review the district court's determination of voluntariness, a finding of fact, under the clearly erroneous standard. See id. at 120-21; United States v. Gonzales, 121 F.3d 928, 938 (5th Cir. 1997).

The totality of the circumstances indicates consent. Most telling in this regard was Easton's request for the officer to retrieve a pair of shorts from within the vehicle. The district court did not find, nor has Easton established any force or coercion. Deputy Constable Stephen Godfrey, the

arresting officer, did not request to search only the trunk of the vehicle. Rather, the record indicates that Godfrey asked Easton if he would allow him to take a look at the vehicle to which Easton agreed.[6]

Easton's second challenge to his conviction centers on his concern that he may be prosecuted again in the United States District Court for the Eastern District of Texas.[7] As explained above, in order for a variance to be fatal to a conviction, it must affect the substantial rights of the accused.

A reversal is mandated when there is either (1) insufficient information in the indictment to inform an accused of the charges such that the lack of information causes a surprise and prevents the presentation of a proper defense or (2) insufficient protection against reprosecution for the same offense. See United States v. Sheikh, 654 F.2d 1057, 1066 (5th Cir. 1981), cert denied, 455 U.S. 991 (1982).

The judgment of conviction as supported by the information in the record bars future prosecution. See United States v. Stricklin, 591 F.2d 1112, 1118 (5th Cir.)(double jeopardy may be established by the indictment, other documents, or even the defendant's testimony), cert. denied, 444 U.S. 963 (1979). Easton does not acknowledge the effect of his criminal conviction based on the same facts as those which would support an indictment in the Eastern District of Texas. He fails to rebut the establishment of double jeopardy by the indictment or other information in the record.

---

[6]We reject each of Easton's alternative arguments. First, we find that Easton voluntarily consented to the search of his vehicle. Next, the search of the passenger compartment was objectively reasonable and not outside the scope of consent. See e.g., United States v. McSween, 53 F.3d 684 (5th Cir. 1995)(We look for "objective reasonableness" to determine whether a search was made within the scope of consent.). Again, the officer asked to search the vehicle. Easton never objected. On the contrary, Easton, who was driving in his boxer shorts, asked the officer to retrieve his short pants while searching the passenger compartment of the vehicle. During this search, the officer found a quantity of cocaine in salt form behind the driver's seat.

[7]The evidence adduced at trial bearing on the issue of possession relates to events occurring in the Nacogdoches, TX which is within the jurisdiction of the United States District Court for the Eastern District of Texas. The superseding indictment was brought in the Western District of Texas.

Furthermore, Easton fails to contradict the government's observation that the burden of proof at trial and during sentencing is the same. In all respects, the offenses are the same; therefore, jeopardy has attached and Easton may not be subject to a subsequent prosecution in the Eastern District of Texas.[8]

Third, Easton complains that the government presented testimonial evidence from witnesses who were either expressly or impliedly offered something in exchange for their testimony. We summarily reject Easton's argument. In United States v. Cervantes-Pacheco, 826 F.2d 310, 314 (5th Cir. 1987), we held that the credibility of a witness is to be determined by the jury. A witness may testify pursuant to a plea agreement involving a promise of a reduced sentence so long as this fact is disclosed to the jury. See id. It is well settled that one panel of this court may not overrule another panel of this court.

Even if we could, the case upon which Easton relies, United States v. Singleton, 144 F.3d 1343 (10th Cir. 1998)(holding that the plain language of § 201(c)(2) prohibits prosecutors from making promises "of value" to witnesses in exchange for testimony) is no longer precedent within the Tenth Circuit. See United States v. Singleton, 165 F.3d 1297, 1301-02 (10th Cir. 1999)("However, in an American criminal prosecution, the granting of lenience is an authority that can only be exercised by the United States through its prosecutor; therefore, any reading of § 201(c)(2) that would restrict the exercise of this power is surely a diminution of sovereignty not countenanced in our jurisprudence."). Moreover, we have rejected the Tenth Circuit's controversial holding in Singleton. See United States v. Haese, 162 F.3d 359, 366 (5th Cir. 1998)("This Circuit. . .has rejected the applicability of the Singleton court's holding.")(internal citation omitted); see also, United States v. Webster, 162 F.3d 308, 356-58 n. 79 (5th Cir. 1998)("A review of this circuit's precedents shows. . .that we consistently have upheld government efforts to provide benefits to witnesses in exchange

---

[8]Easton posits that the issue is whether he could have been subject to prosecution in the Eastern District of Texas at the time the indictment was brought in the Western District of Texas. While we find no merit in this claim, even if there was a variance in the indictment permitting such an outcome, it would have been harmless error. See United States v. Pierce, 893 F.2d 669 (5th Cir. 1990).

for testimony."). Finally, we are not bound to follow precedent from our sister circuits. Singleton offers no basis for relief.

Finally, we address Easton's argument that he was entitled to a limiting instruction.[9] The standard of review for an alleged failure to give a proper limiting instruction, when a proper objection has been made, is abuse of discretion. United States v. Speer, 30 F.3d 605 (5ᵗʰ Cir. 1994). Absent a proper objection, the standard of review is plain error. Fed. R. Crim. Proc. 52(b). Neither of Easton's two claims appear to merit redress in light of the standard of review and the record. He has not shown prejudice or otherwise overcome the substantial evidence pointing to his guilt in the charged offenses.

When the government attempted to introduce evidence relevant to Cedric Jones's alleged conversations with an IRS agent and others, the district court sustained Easton's hearsay objection. Consequently, the prosecutor was prohibited from exploring the details of a meeting between Cedric Jones and other authorities. Moreover, Easton may not challenge the voluntary statements or confession of Cedric Jones as hearsay under Fed. R. Evid. 801(d)(2)(A); therefore, he was not entitled to a limiting instruction as hearsay. Furthermore, none of the statements implicated Easton and the district court charged the jury that the case against each defendant should be considered separately and individually. Combined, we find that any error was harmless and did not affect Easton's substantial rights.

In like manner, we reject Easton's second claim relating to the testimony of Yolanda Row. The district court sustained Easton's objection to her testimony and instructed the jury not to consider any testimony or other evidence which had been stricken.

Finding no basis for relief, we affirm Easton's conviction.

---

[9]Easton explains that the following evidence, harmful to him, should have been limited: (1) co-appellant's alleged conversation with authorities that he wanted to work out some sort of deal for his testimony, thereby implying guilt and (2) certain hearsay statements about Easton being arrested with some drugs. Easton argues that it was unclear as to whether or not this was an extraneous matter impermissibly discussed under Rule 404(b) of the Fed. R. Evid.

11

## III.

We AFFIRM the conviction of each appellant. To the extent each appellant adopts arguments articulated by another appellant, we similarly find no basis for relief.