# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

No. 97-50237
(Summary Calendar)
_____

UNITED STATES OF AMERICA

                                    Plaintiff-Appellee,

                    versus

DAVID ROY TOMPKINS, a/k/a
DAVID ROY YATES

                                    Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas

_____

November 25, 1997

Before WIENER, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

WIENER, Circuit Judge:

Defendant-Appellant David Roy Tompkins appeals his 21 U.S.C. § 841(a)(1) conviction for possession with intent to distribute methamphetamine, arguing that some of the evidence used against him was the product of an unlawful search and, as such, was erroneously admitted at trial. Tompkins' initial contention is that this circuit should revise its standard of review of a district court's ultimate determination that consent to search was voluntary —— changing from plain error to de novo —— basing his argument on a

recent Supreme Court opinion.[1]  Finding Tompkins' position on the appropriate standard of review fallacious, and perceiving no reversible error in the district court's findings and holding, we affirm.

I.

FACTS AND PROCEEDINGS

Tompkins was convicted following a bench trial for possession with intent to distribute methamphetamine and sentenced to a sixty-month term of imprisonment, a four-year term of supervised release, and a $3,000 fine.  Prior to trial, Tompkins filed a motion to suppress evidence seized during a search of the motel room that he was occupying when arrested.

Tompkins argued for suppression on the ground that his consent to the search —— conducted without a warrant —— was not voluntarily given; rather, insists Tompkins, his consent was obtained through the arresting officer's threat to secure the motel room and procure a search warrant.  The officer's threat, says Tompkins, gave him the impression that a search was inevitable, thereby causing him to believe that he had no choice but to consent.  So induced, asserts Tompkins, his consent was coerced, and the motel-room evidence was obtained by means of an unlawful search.  As a result, concludes Tompkins, the district court erred reversibly in denying his motion to suppress and admitting the evidence at trial.

The evidence introduced at the suppression hearing revealed

---

[1]Ornelas v. United States, __ U.S. __, 116 S.Ct. 1657 (1996). See infra note 5 and accompanying text.

the following facts surrounding Tompkins' arrest. An anonymous informant, through a "Crimestoppers" hotline, informed law enforcement authorities that Tompkins had checked into a La Quinta Motel room and that he had a large quantity of methamphetamine with him at the time. According to the informant, Tompkins had transported the methamphetamine from California to Texas for distribution. The informant also indicated that Tompkins was accompanied by a woman, Kimberly Rendon, who might have been wanted by Bell County authorities. And the informant provided physical descriptions of both Tompkins and Rendon.

Acting on that information, Officer Michael Brown of the Killeen Police Department contacted the La Quinta desk clerk to confirm that Tompkins was registered at the motel. At first the clerk was unable to confirm Tompkins' registration, but a subsequent check revealed that Tompkins — originally thought to have been registered to room 234 — had been given room 236. The La Quinta night manager called Officer Brown at 3:30 a.m., shortly after Tompkins and those accompanying him returned to the motel. Brown went to the motel and kept Tompkins' room under surveillance until its lights were dimmed, then departed. He returned to the motel prior to check-out time the next morning and resumed his surveillance.

Officer Brown saw three women — one of whom matched the description of Rendon — leave the room, enter a vehicle, and drive away. While Brown followed the vehicle he had a check run on Rendon. He then stopped the car after observing the driver commit

a traffic violation and called for backup. Rendon was a passenger in the vehicle. Brown told the occupants why he had stopped their car, and also related the information that he had received regarding the methamphetamine.

The driver consented to a search of the vehicle, and a drug dog alerted to a cosmetic case that Officer Brown had seen one of the passengers carrying out of Tompkins' motel room. The officer found a baggie containing methamphetamine residue in the cosmetic case. One of the women then told Officer Brown that there was methamphetamine in Tompkins' room. Rendon was arrested on an outstanding warrant, but the other women were released. Fearing that the released women might contact Tompkins, Officer Brown quickly returned to the motel with another officer.

When he arrived, Officer Brown knocked on Tompkins' door and identified himself as a police officer. Tompkins presented his identification on request but refused to allow the officers to enter the room. Brown told Tompkins about the anonymous tip and Rendon's arrest. When Tompkins heard this he was "visibly shaken." Brown again asked Tompkins for consent to a search of his motel room, informing Tompkins that he could refuse. Tompkins was also told by Brown that the officers would obtain a search warrant for the room if consent were withheld and that Tompkins would be denied access to the room while the warrant was being obtained. Tompkins then agreed to the search and signed a consent form. A distribution quantity of methamphetamine was recovered from the room.

4

II.

ANALYSIS

A.    STANDARD OF REVIEW

With regard to a ruling on a motion to suppress, we review "the district court's factual findings for clear error and its ultimate conclusion as to the constitutionality of the law enforcement action de novo."[2]  Under the law of this circuit, the voluntariness of a detainee's consent to a warrantless search is a finding of fact to be reviewed for clear error.[3]  Despite this long-standing Fifth Circuit standard, Tompkins maintains that, in light of the Supreme Court's recent Ornelas decision,[4] we should re-examine our standard of review of the question whether consent to search is given voluntarily and change to a standard that incorporates de novo review.  We disagree.

In Ornelas, the Supreme Court held that a district court's determination of reasonable suspicion and probable cause when evaluating the constitutionality of investigative stops and searches under the Fourth Amendment is subject to a two-tier standard of appellate review: The ultimate conclusion on reasonable

---

[2]United States v. Jenkins, 46 F.3d 447, 451 (Th Cir. 1995) (citing United States v. Calves-Villarreal, 3 F.3d 124, 126 (5th Cir. 1993)).

[3]United States v. Brown, 102 F.3d 1390, 1394 (5th Cir. 1996), cert. denied, __ U.S. __, 117 S.Ct 1455, 137 L.Ed.2d 559 (1997); United States v. Zucco, 71 F.3d 188, 191 (5th Cir. 1995), cert. denied, __ U.S. __, 117 S.Ct. 91, 136 L.Ed.2d 47 (1996); United States v. Kelley, 981 F.2d 1464, 1470 (5th Cir. 1993), cert. denied, 508 U.S. 944, 113 S.Ct 2427, 124 L.Ed.2d 647 (1993).

[4]__ U.S. __, 116 S.Ct. 1657 (1996).

suspicion or probable cause —— a mixed question of law and fact ——
is reviewed <u>de novo</u>, whereas the events leading up to the search or
seizure —— the historical facts —— are reviewed for clear error,
giving "due weight to inferences drawn from those facts by resident
judges and local law enforcement officers."[5]

Tompkins notes that the determination whether consent to a
warrantless search was voluntary involves applying legal principles
to historical facts.[6].516 U.S. 99, 116 S.Ct. 457, 133 L.Ed.2d 383
(1995).[7]  Thus, urges Tompkins, voluntariness of consent should be
subject to the same two-tier standard of review that
<u>Ornelas</u> established for reasonable suspicion and probable cause ——
insisting that voluntariness of consent too is a  mixed question of
law and fact under the Fourth Amendment.[8]

---

[5] <u>Id.</u> at 1663.

[6]Tompkins relies on <u>Thompson v. Keohane</u>,

516 U.S. 99, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995), for the
proposition that voluntariness of consent to search is a mixed
question of law and fact.  The <u>Keohane</u> court held that, for
purposes of federal habeas corpus proceedings, the issue whether a
suspect is "in custody," and therefore entitled to Miranda
warnings, is a mixed question of law and fact qualifying for
independent review.  <u>Id.</u> at ___, 116 S.Ct. at 460.  Tompkins'
reliance on <u>Keohane</u> is misplaced.  <u>See</u> <u>Ohio v. Robinette</u>, discussed
<u>infra</u> note 8 and accompanying text.

[8]<u>See</u> <u>Ornelas</u>, ___ U.S. at ___, 116 S.Ct at 1662 ("The
principal components of a determination of reasonable suspicion or
probable cause will be the events which occurred leading up to the
stop or search, and then the decision whether these historical
facts, viewed from the standpoint of an objectively reasonable
police officer, amount to reasonable suspicion or to probable
cause.  The first part of the analysis involves only a
determination of historical facts, but the second is a mixed
question of law and fact: '[T]he historical facts are admitted or
established, the rule of law is undisputed, and the issue is
whether the facts satisfy the [relevant] statutory [or

We decline Tompkins' invitation to employ <u>Ornelas</u>' two-tier standard when we review a district court's determination whether consent to search was given voluntarily. The Supreme Court reiterated its deferential standard of review for Fourth Amendment voluntariness determinations in <u>Ohio v. Robinette</u>,[9] a post-<u>Ornelas</u> decision. The <u>Robinette</u> Court noted that voluntariness of consent to search is a question of fact;[10] as such, it does not trigger the <u>de novo</u> review mandated by the Supreme Court in <u>Ornelas</u> for mixed questions of law and fact.[11] The Supreme Court's refusal to depart

---

constitutional] standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated.'")(citation omitted).

[9] ___ U.S. ___, 117 S.Ct. 417 (1996).

[10]<u>Id.</u> at 421 ("The Fourth Amendment test for a valid consent to search is that the consent be voluntary, and '[v]oluntariness is a question of fact to be determined from all the circumstances.") (citing <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 248-49, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854 (1973)).

[11]Care should be taken not to confuse voluntariness of consent to search in the Fourth Amendment context with voluntariness of criminal confessions in the Fifth or Fourteenth Amendment contexts, which ultimate issue is uniformly held to be subject to <u>de novo</u> review. <u>See</u> <u>Haynes v. Washington</u>, 373 U.S. 503, 515, 83 S.Ct. 1336, 1344, 10 L.Ed.2d 513 (1963); <u>United States v. D.F.</u>, 115 F.3d 413, 419 (7th Cir. 1997); <u>United States v. Han</u>, 74 F.3d 537, 540 n. 1 (4th Cir. 1996), <u>cert. denied</u>, ___ U.S. ___, 116 S.Ct. 1890, 135 L.Ed.2d 184 (1996); <u>United States v. Kime</u>, 99 F.3d 870, 879 (8th Cir. 1996), <u>cert. denied</u>, ___ U.S. ___, 117 S.Ct. 1015, 136 L.Ed.2d 892 (1997); <u>United States v. Hernandez</u>, 93 F.3d 1493, 1501 (10th Cir. 1996); <u>United States v. Rambo</u>, 74 F.3d 948, 953 (9th Cir. 1996), <u>cert. denied</u>, ___ U.S. ___, 117 S.Ct. 72, 136 L.Ed.2d 32 (1996) <u>United States v. Bethancourt</u>, 65 F.3d 1074, 1078 (3d Cir. 1995), <u>cert. denied</u>, ___ U.S. ___, 116 S.Ct. 1032, 134 L.Ed.2d 109 (1996); <u>United States v. Scurlock</u>, 52 F.3d 531, 535 (5th Cir. 1995); <u>United States v. Burns</u>, 15 F.3d 211, 216 (1st Cir. 1994); <u>United States v. Barbour</u>, 70 F.3d 580, 584 (11th Cir. 1995), <u>cert. denied</u>, ___ U.S. ___, 116 S.Ct. 1445, 134 L.Ed.2d 565 (1996)); <u>United States v. Wrice</u>, 954 F.2d 406, 411 (6th Cir. 1992), <u>cert. denied</u>, 504 U.S. 945, 112 S.Ct. 2286, 119 L.Ed.2d 211 (1992);

from its established precedent,[12] coupled with the virtually monolithic position of the circuits in affording deferential review to voluntariness inquiries raised by consensual searches,[13] persuades us that Tompkins' reliance on <u>Ornelas</u> to mandate a change in our clear error standard of review is misplaced.[14]

B.    APPLICABLE LAW

A search conducted pursuant to consent is one of the well-settled exceptions to the Fourth Amendment's warrant requirement.[15] In relying upon the consensual search exception, the government

<u>United States v. Yunis</u>, 859 F.2d 953, 958 (D.C. Cir. 1988).

[12]<u>See</u> <u>Schneckloth</u> 412 U.S. at 227, 93 S.Ct. at 2047-48 ("[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances.").

[13] <u>United States v. Chan-Jimenez</u>, No. 96-10482, 1997 WL 600644, at *3 (9th Cir. Oct. 1, 1997); <u>United States v. Carrate</u>, 122 F.3d 666, 670 (8th Cir. 1997); <u>United States v. Brown</u>, 102 F.3d 1390, 1394 (5th Cir. 1996), <u>cert.</u> <u>denied</u> __ U.S. __, 117 S.Ct 1455, 137 L.Ed.2d 559 (1997); <u>United States v. Lattimore</u>, 87 F.3d 647, 650 (4th Cir. 1996); <u>United States v. Navarro</u>, 90 F.3d 1245, 1256 (7th Cir. 1996); <u>United States v. Orrego-Fernandez</u>, 78 F.3d 1497, 1505 (10th Cir. 1996); <u>United  States v. Tillman</u>, 963 F.2d 137, 143 (6th Cir. 1992); <u>United States v. Lewis</u>, 921 F.2d 1294, 1301 (D.C. Cir 1990); <u>United States v. Garcia</u>, 890 F.2d 355, 359 (11th Cir. 1989); <u>United States v. Kimball</u>, 741 F.2d 471, 474 (1st Cir. 1984); <u>United States v. Faison</u>, 679 F.2d 292, 298 n. 5 (3d Cir. 1982).

[14]Given our adherence to the maxim of <u>stare</u> <u>decisis</u> within our own court, this panel could not change the standard of review for voluntariness of consent — or anything else, for that matter — when, as here, doing so would constitute failure to follow precedent established in an earlier decision.  The most that we could do if we agreed with Tompkins — which we do not — would be to follow existing precedent, note our concerns, and suggest (or let Tompkins suggest) rehearing en banc.

[15]<u>United States v. Jenkins</u>, 46 F.3d 447, 451 (5th Cir. 1995) (citing <u>Schneckloth</u>, 412 U.S. at 219, 93 S.Ct. at 2045).

must prove, by a preponderance of the evidence, that consent was freely and voluntarily given.[16]  Voluntariness is determined from the totality of the circumstances surrounding the search;[17] relevant factors include:

> (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.[18]

Although all six factors are relevant, "no single factor is dispositive or controlling of the voluntariness issue."[19]

Tompkins argues that his consent was coerced in light of the investigating officer's failure, when informing Tompkins of the consequences of his refusal to consent, to distinguish between procuring a search warrant and attempting to procure a search warrant.  Tompkins' point is that because he was told by Officer Brown that a warrant would be obtained — not that a warrant would be sought or applied for — Tompkins was given the impression that a search of the motel room was inevitable.  This impression, he insists, rendered his consent no more than an acquiescence to that which he was led by Brown to believe was a law enforcement claim of

---

[16]_Id._; United States v. Ponce, 8 F.3d 989, 997 (5th Cir. 1993).

[17]Schneckloth, 412 U.S. at 227, 93 S.Ct. at 2048; Jenkins, 46 F.3d at 551.

[18]United States v. Olivier-Becerril, 861 F.2d 424, 426 (5th Cir. 1988) (citations omitted).

[19]_Id._; Jenkins, 46 F.3d at 451.

lawful authority.[20]

In support of his argument, Tompkins invites our attention to dicta in <u>United States v. Boukater</u>[21] suggesting that consent might not be voluntary if the investigating officer "either said or implied that defendant might as well consent because a warrant could be quickly obtained if he refused."[22]  Tompkins also relies on <u>United States v. White</u>,[23] in which we held that the district court's voluntariness finding was not clearly erroneous when the investigating agent, in requesting the defendant's consent to search, explained that he could not automatically get a warrant but would have to show probable cause to a magistrate.[24]

We agree with the district court's observation that Officer Brown's statement to Tompkins concerning the possibility of a search warrant is but one factor to be considered among the totality of the circumstances in evaluating the voluntariness of

---

[20]<u>See</u> <u>Bumper v. North Carolina</u> 391 U.S. 543, 548-49, 88 S.Ct. 1788, 1791-92, 20 L.Ed.2d 797 (1968) (noting that the government's burden of proving voluntariness of consent "cannot be discharged by showing no more than acquiescence to a claim of lawful authority" and finding such acquiescence where "consent" to search was given only after the investigating  officer falsely asserted that he had a warrant).

[21]409 F.2d 537 (5th Cir. 1969).

[22]<u>Id.</u> at 538.

[23]617 F.2d 1131 (5th Cir. 1980).

[24]<u>Id.</u> at 1134.  In <u>White</u>, however, we refused to speculate on the application of the <u>Boukater</u> dicta as the "facts of [the <u>White</u>] case did not fit the [<u>Boukater</u>] hypothesis."  <u>Id.</u>

Tompkins' consent.[25] We also agree with the court's reasoning that the distinction between a suspect's being told by an officer that he "would obtain" a warrant rather than that he "would apply for" a warrant, is largely semantic and that, under the circumstances of this case, the distinction weighs only slightly in favor of a coercion finding.

Considering all the relevant factors, Officer Brown's choice of words is not sufficiently significant to convince us that the district court's voluntariness determination was clearly erroneous:[26] Tompkins was not taken into custody and thus was apparently free to leave; other coercive police procedures were absent, i.e., Tompkins was not handcuffed until the search revealed the presence of methamphetamine, no threats or violence were used, and there was no overt display of authority; when Tompkins initially refused to allow the officers to enter his room, he was

---

[25]See United States v. Momodu, 909 F. Supp. 1571, 1580 (N.D. Ga. 1995) (refusing to decide that "the way [an officer presents] the possibility of a search pursuant to a warrant is, in itself, dispositive of the issue of voluntariness").

[26]Tompkins cites a case from the Northern District of Georgia, in which the district court determined that the manner in which the officer presented the possibility of search pursuant to warrant "strongly suggest[ed] that . . . consent was not freely given." Id. at 1580. The officer whose consensual search was questioned in Momodu, however, was more coercive than Brown, informing the apartment owner that "he 'was going to search the apartment' and that he 'was going to do it with a search warrant if she did not give [him] consent.'" Id. In addition, the officer explained to the apartment owner that he "would have an officer sit with her until he obtain[ed] his warrant." Id. at 1577. Although Brown informed Tompkins that he would secure the motel room, he did not indicate that he would restrict Tompkins' movement in any way; rather, Tompkins was told only that he would not be able to go back into the room while a warrant was being obtained.

**11**

told that he did not have to consent to a search; Tompkins cooperated to the extent of providing his identification and ultimately permitting the search; Tompkins was found by the court to be a man of average intelligence who, with charges pending against him in California, was not unfamiliar with the criminal justice system; and, finally, Tompkins' knowledge that incriminating evidence would be found does not necessarily weigh against a finding of voluntary consent. For example, inasmuch as Tompkins knew that some inculpatory evidence was already in the possession of police, he might have consented in the hope that his cooperation would result in more favorable treatment.

## III.

## CONCLUSION

Under the totality of the circumstances surrounding Tompkins' consent to search his motel room, we can discern no clear error in the district court's conclusion that Tompkins' consent was voluntary. For the foregoing reasons, the judgment of the district court is, in all respects,

AFFIRMED.