**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**Nos. 97-11014 & 97-10787**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**PHILIP HAMILTON SHARMAN; ELISEO PEREZ-CORTES,**

**Defendants-Appellants.**

**Appeal from the United States District Court**
**for the Northern District of Texas**
**(2:97-CR-08-1; 2:97-CR-6-3)**

July 30, 1998

Before JOLLY, SMITH, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

The linchpin for this consolidated appeal, regarding state troopers' vehicle-stops and resulting seizures of illegal aliens and narcotics, is whether the troopers had probable cause to believe that a traffic violation had occurred, consistent with *Whren v. United States*, 517 U.S. 806 (1996). Concluding that they did, we **AFFIRM**.

I.

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

On 1 February 1997, a Texas state trooper was on traffic patrol along Interstate 40, near Vega, Texas.  The Trooper observed a motor home begin to exit the interstate; then "jerk[]" back onto it;  and then cross the median to a frontage road.  Having observed a violation of Texas traffic laws, the Trooper stopped the vehicle.

The driver explained that he crossed to the frontage road because he was out of gas.  After talking separately with the driver and passenger, and receiving conflicting accounts of their travels, the Trooper radioed for a nearby United States Border Patrol canine unit.  Hearing this request, the driver confessed that he was transporting 28 illegal aliens.  The Trooper then issued the driver a warning for illegally crossing the median, and turned the matter over to the Border Patrol Agents.

Defendant Perez-Cortes was a passenger in the motor home, and was identified as, and admitted to being, the individual responsible for arranging the transportation of the illegal aliens. He was charged with conspiracy to transport and transporting illegal aliens, in violation of 18 U.S.C. § 371 and 8 U.S.C. § 1324(a)(1)(A)(ii).  Following denial of his suppression motion, Perez-Cortes entered a conditional guilty plea, and was sentenced, *inter alia,* to 11 months imprisonment.

On the day the motor home was stopped, 1 February 1997, another Texas state trooper, while on patrol of the same

interstate, observed a vehicle run a stop sign on the frontage road adjacent to the interstate. The Trooper stopped the vehicle.

When he approached the driver, Defendant Sharman, the Trooper noticed that Sharman was fumbling with his wallet; and that his hands were visibly shaking. After informing Sharman that he would issue a warning citation for running the stop sign, the Trooper asked for consent to search the vehicle. Sharman refused.

A Border Patrol canine unit, that had arrived at the scene shortly after the stop, searched the outside of the vehicle and alerted immediately to the trunk area. At the request of the Trooper, Sharman provided the keys to the trunk; it contained approximately 100 pounds of marijuana.

Sharman was charged with possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841. Following denial of his suppression motion, Sharman entered a conditional guilty plea, and was sentenced, *inter alia*, to 37 months imprisonment.

At the time of each stop, the Border Patrol was conducting "Operation Vega", with cooperation from the Drug Enforcement Administration and local law enforcement agencies. Two decoy signs indicating immigration and narcotics checkpoints were placed along Interstate 40, near an exit, for the purpose of determining if vehicles were attempting to evade the phantom checkpoints.

The Texas Department of Public Safety was aware of the operation, and attended a planning meeting for it. However, it

declined to participate in the operation. Each Trooper testified at the suppression hearing involving their respective stop that, even if Operation Vega had not been conducted in the area, each defendant would have been stopped. And, a Border Patrol Agent testified that, during the operation, the Border Patrol was assigned its own radio channel; that one Agent was assigned to monitor the "intercity" radio channel for radio traffic from local authorities; and that, when a Border Patrol canine unit is in an area, local authorities are notified in the event they wish to use it.

In denying the suppression motions, the magistrate judge concluded, *inter alia*, that the stops at issue were based on traffic violations, and thus proper. The district court agreed.

## II.

Needless to say, in reviewing the denial of the suppression motions, "we review 'the district court's factual findings for clear error and its ultimate conclusion as to the constitutionality of the law enforcement action *de novo*'". **United States v. Tompkins**, 130 F.3d 117, 119-20 (5th Cir. 1997), *cert. denied*, 118 S. Ct. 1335 (1998) (quoting **United States v. Jenkins**, 46 F.3d 447, 451 (5th Cir. 1995)).

**Whren** notwithstanding, Sharman and Perez-Cortes contend that the district court erred in denying their suppression motions because they were unreasonably seized during Operation Vega,

maintaining in support that the stops were based solely upon their decisions to exit the interstate and upon their out-of-state license plates. In this regard, they assert that the operation was illegal, in that it impermissibly used Texas state troopers to effect investigative stops, which the Border Patrol was legally precluded from doing. They claim that, as a result, the evidence seized and statements given should be suppressed as fruit of the poisonous tree.

Along this line, they maintain that "the Border Patrol articulated no facts whatsoever that would support *its decision* to stop" them; and that, as noted, two impermissible criteria were used to investigate motorists: exiting the interstate, and out-of-state license plates. (Emphasis added.) Also, both request that, in the light of the district court's application of **Whren**, we address how **United States v. Brignoni-Ponce**, 422 U.S. 873 (1975), relating to roving Border Patrol stops, retains vitality.

In support of their theory that the Border Patrol and Texas state troopers were working together on Operation Vega, Sharman and Perez-Cortes state that one of the Troopers testified at the suppression hearing that she had immediate radio contact with the Border Patrol; that Border Patrol agents testified that they were working with state officials; and that the Border Patrol characterized Operation Vega as a roving patrol.

We need not decide whether Operation Vega was an illegal roving patrol, or whether the Texas state troopers were acting as agents for the Border Patrol. Instead, our starting and ending point is well established: "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred". *Whren,* 517 U.S. at 810.

It is undisputed that each stop followed a traffic violation: the first, crossing the median; the second, running a stop sign. It is also undisputed that Texas state troopers, *not* the Border Patrol, made both stops. In short, the Troopers had probable cause to believe that traffic violations had occurred; therefore, the stops were reasonable under the Fourth Amendment, with the resulting evidence seized and statements taken admissible. *Id*. at 819. No more need be said.

### III.

For the foregoing reasons, the judgments are

*AFFIRMED.*