IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 00-31366
Summary Calendar
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HERBERT JOHNSON, JR.,

Defendant-Appellant.

--------------------
Appeal from the United States District Court
for the Eastern District of Louisiana
(00-CR-131-1-F)
--------------------
June 18, 2001

Before HIGGINBOTHAM, WIENER, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Herbert Johnson, Jr. was indicted for possession of a firearm as a convicted felon and for possession with intent to distribute less than 100 grams of heroin in violation of 21 U.S.C. § 841(a)(1). Johnson filed a motion to suppress evidence of the gun and the narcotics, which were found during a search of his room in his mother's house after she consented to a search. Johnson insists that his Fourth Amendment rights were violated when he was stopped while driving his car and

_____

        [*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

detained at the site. As a result, argues Johnson, the consent subsequently given to the two DEA agents by his mother, Vivian Johnson, to search "his" room in her home — even if knowing and voluntary, which he contests — was the product of the unlawful stop. Consequently, he asserts, the evidence found in his room was fruit of the poisonous tree and thus inadmissible. Disagreeing with Johnson for the reasons set forth below, we affirm the district court's denial of his suppression motion and also affirm his conviction and sentence.

"The proponent of a motion to suppress has the burden of proving, by a preponderance of evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights." United States v. Kelley, 981 F.2d 1464, 1467 (5th Cir. 1993)(citation omitted). In considering a ruling on a motion to suppress, we review questions of law de novo and factual findings for clear error. United States v. Dortch, 199 F.3d 193, 197 (5th Cir. 1999), corrected on denial of rehearing, 203 F.3d 883 (5th Cir. 2000). The evidence is viewed in the light most favorable to the party that prevailed in the district court. Id.

The district court was vocally critical of the stop of Johnson's car and his detention there by the police, agreeing with Johnson that it violated the Fourth Amendment. Not surprisingly, the government disagrees. For purposes of our consideration today, however, we need not resolve this issue; instead we assume without granting that the initial stop and detention was improper, as held by the district court. The issue before us is thus narrowed to the

2

question whether the search of Johnson's room that actually turned up the evidence — the gun and the narcotics — was tainted by the stop, making the resulting evidence fruit of the poisonous tree as he contends or, as the government contends and the district court found, the product of a search made lawful by informed consent sufficiently attenuated from the assumedly unlawful stop and detention of Johnson, thereby avoiding suppression.

"[V]oluntary consent can validate a search even when the consent to search is preceded by a Fourth Amendment violation." United States v. Kelley, 981 F.2d at 1470. We evaluate consent given after a Fourth Amendment violation by making a two-pronged inquiry: (1) whether the consent was voluntarily given; and (2) whether the consent was an independent act of free will. United States v. Chavez-Villarreal, 3 F.3d 124, 127 (5th Cir. 1993). "The first prong focuses on coercion, the second on causal connection with the constitutional violation." Id.

We consider six factors when evaluating the voluntariness of consent: (1) The voluntariness of defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of cooperation with the police; (4) the defendant's awareness of the right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found. United States v. Tompkins, 130 F.3d 117, 121 (5th Cir. 1997). No single factor is dispositive; and we must determine the voluntariness of consent from the totality of the circumstances. Id. When the trial

3

court's finding of consent is based on oral testimony at a suppression hearing, as it was here, our clear-error standard of review of factual findings is "particularly strong since the judge had the opportunity to observe the demeanor of the witnesses." United States v. Gonzales, 79 F.3d 413, 421 (5th Cir. 1996)(citation and internal quotation marks omitted).

Mindful at all times that in this case the person suffering the unlawful seizure was a different person than —— and was geographically remote from —— the person giving the consent to search, our careful review of the record of the extensive suppression hearing in the instant case satisfies us that the six Tompkins factors for determining voluntariness support the district court's conclusion on that aspect. Both Vivian Johnson and a neighbor who at Mrs. Johnson's request was present at all relevant times, testified in detail regarding the discrete occurrences between the time when two agents appeared at the Johnson house and the time, following a reading and explanation of the consent form by one agent, when Mrs. Johnson signed that form. Mrs. Johnson knew that her son was in custody, but understood that she was not; her version of the events and that of her neighbor's eschew the presence of any coercive procedures by the police —— on the contrary only two agents were present and they were considerate and solicitous; Mrs. Johnson was cooperative with the agents; she was aware of her right to refuse consent, as demonstrated both by the wording of the form that one agent read to her and by her and the neighbor's discussion and weighing of the warrant option; the

4

record reflects nothing about her education, but her testimony demonstrates that Mrs. Johnson was clearly of average or higher intelligence; and she expressed confidence that nothing would be found in the search that would incriminate her. All of this amply supports the district court's conclusion that Mrs. Johnson's consent was given freely and knowingly, and was not the product of police intimidation or duress. We agree with the district court that Mrs. Johnson's consent to search was free, voluntary, and knowingly given.

Nevertheless, when there has been an unlawful detention, the suppression court must consider three additional factors to evaluate the validity of a consent to search: (1) The temporal proximity of the illegal conduct and the consent; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the initial misconduct. Brown v. Illinois, 422 U.S. 590, 603-04 (1975); United States v. Jones, 234 F.3d 234, 243 (5th Cir. 2000). Again, we must temper and adjust our Brown analysis in the instant case with constant awareness that the person who gave the consent is Mrs. Johnson, not the person who was unlawfully detained, her son, Herbert Johnson, Jr., the Defendant-Appellant.

As for temporal separation, there is no direct testimony on precisely how much time elapsed between the stop and detention of Johnson and the giving of consent by his mother; however, extrapolation of facts in the record supports the government's position that 20 or 30 minutes elapsed between the initial stop and the consent. Particularly when considered in light of Johnson's

5

continuing detention, the temporal separation between the car stop and the agents' receipt of consent has to be classified as "close." Close proximity, in and of itself, is not dispositive, however. See United States v. Kelley, 981 F.2d at 1471. When, as here, there is no evidence of coercive police tactics, and the person from whom consent is sought is adequately informed of the right to refuse consent, these factors constitute intervening circumstances sufficient to purge the taint of an unreasonable detention. Id. at 1471-72. As in Kelley, there is no indication here that police used coercive tactics that would lead Mrs. Johnson to believe that she could not refuse consent. To the contrary, both she and her neighbor testified that the agents explained the form and read it to her before she signed it; and both acknowledged that the form states that she could refuse to consent. Not only does the record reflect a total absence of coercive tactics, it contains affirmative evidence that the agents were patient, polite, and accommodating to Mrs. Johnson's nervousness and concerns. No weapons were ever drawn, much less pointed; there was no badgering or raising of voices; there was no hint of threats for refusing to consent. Neither did Mrs. Johnson view her son in custody or know whether other law enforcement agents were in the vicinity of her house.

The record supports the determination of the district court that there were sufficient intervening circumstances to cure the Fourth Amendment violation that the district court attributed to Johnson's initial stop and detention, particularly in light of the

6

fact that it was not Johnson but his mother —— located, as she was, in her home several miles away from the point of detention —— who granted the consent to search and who limited it to Johnson's room rather than the entire premises. Moreover, as sole owner of the house and of some of the personal effects in the room occupied by her son at her sufferance, Mrs. Johnson clearly was the appropriate person to grant or deny consent to search.

In sum, we are satisfied that Vivian Johnson's consent to search was voluntarily given and that it was sufficiently attenuated from the stop and detention that presumably violated the Fourth Amendment rights of her grown son to cure any taint that such constitutional defect might otherwise have imparted to her consent. See United States v. Kelley, 981 F.2d at 1471-72; Brown v. Illinois, 422 U.S. 590, 603-04 (1975). Accordingly, we hold that the motion to suppress was properly denied and that Johnson's conviction on his plea of guilty should be and therefore is, in all respects,

AFFIRMED.