IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 31, 2007

Charles R. Fulbruge III
Clerk

No. 06-40495
Summary Calendar

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

LUCIANO HUERTA

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:01-CR-846-1

Before KING, DAVIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

A jury convicted Luciano Huerta ("Huerta") of one count of conspiracy to commit money-laundering. He later pleaded guilty to one count of conspiracy to possess with intent to distribute more than five kilograms of cocaine and more than 100 kilograms of marijuana. Huerta now appeals the district court's denial of his motion to suppress evidence obtained as the result of a traffic stop during which $192,568 in cash was found secreted in his car. Finding no error, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

We review findings made by a district court on a motion to suppress for clear error and the district court's ultimate conclusions on Fourth Amendment issues de novo, viewing the evidence in the light most favorable to the prevailing party, in this case, the Government. See United States v. Santiago, 310 F.3d 336, 340 (5th Cir. 2002). We evaluate the legality of a stop and a subsequent search under the familiar test of Terry v. Ohio, 392 U.S. 1 (1968). See United States v. Brigham, 382 F.3d 500, 506 (5th Cir. 2004) (en banc).

Huerta recognizes the validity of a pretextual traffic stop as long as the officer making the stop "h[as] probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 810 (1996). However, he alleges that Texas State Trooper Rick Magana created probable cause because of a profiling hunch and alleged a two-mile-an-hour infraction. There is nothing in the record to suggest that the district court clearly erred in finding that Magana had probable cause to believe Huerta violated traffic laws. At the suppression hearing, Huerta did not even contest the traffic stop.

At the suppression hearing, Huerta contested his continued detention after the traffic stop and renews this argument on appeal. The hearing testimony and videotape show that in the four minutes before requesting a computer check, Magana observed Huerta stop his car, immediately exit the vehicle, and approach him. Huerta was driving a new car with paper license plates. At that time, the license plate number and expiration date were hidden on the top right of the Texas paper license plates. Magana walked around the car, stopped at the driver's side of the windshield, and looked where the vehicle identification number would be located. He continued around the car and inspected the paper license plate. He then returned to speak with Huerta. After turning on the microphone for the video camera, Magana spoke to Huerta about his destination and asked about the new car. He then patted down Huerta after telling him to relax. After the pat-down, Magana asked for a computer check of Huerta's

drivers license. While waiting for the results of the computer check, Magana asked Huerta for consent to search the car.

The record shows that the district court did not err in finding that Huerta was not unduly detained. The videotape and hearing testimony indicate that Magana engaged in investigation necessary to the traffic stop, such as speaking to Huerta about the vehicle, making a cursory inspection of the exterior of the vehicle, and closely inspecting the paper license plate. Such investigation was reasonably related to the traffic stop and determining whether the vehicle was properly registered. These actions would "efficiently determine whether a traffic violation ha[d] taken place, and if so, whether a citation or warning should [have been] issued or an arrest made." Brigham, 382 F.3d at 508. Also, "[a]n officer may . . . ask about the purpose and itinerary of a driver's trip during the traffic stop." Id. Thus, the initial part of the stop was justified.

During a legitimate investigative stop, a police officer may, for his protection, and without probable cause, conduct a limited protective search for weapons if "he has reason to believe that he is dealing with an armed and dangerous individual." Terry v. Ohio, 392 U.S. 1, 27 (1968). A review of the record does not indicate that the district court clearly erred in finding that Magana was suspicious of answers that Huerta gave to the trooper's questions. Indeed, the testimony and videotape support that finding. The videotape also shows Huerta's immediate exit from the vehicle and approach toward Magana after stopping his car. Under these circumstances, Magana's initiation of a limited pat-down of Huerta for weapons before requesting the computer check was justified.

Huerta acknowledges that an officer can run a computer check during a traffic stop. See United States v. Shabazz, 993 F.2d 431, 437 (5th Cir. 1993). His primary complaint about the length of detention is that there was no computer check. However, the evidence clearly shows that Magana requested a computer check of Huerta's license. Huerta recognizes that an officer can question

subjects of a traffic stop during the time when a computer check is being conducted. See United States v. Dortch, 199 F.3d 193, 198 (5th Cir. 1999). Thus, there is no question that the continued detention after the pat-down was justified. There is no clear error in the district court's conclusion that Huerta was not unduly detained.

The final issue is whether the consent to search the car was valid, a factual determination that we review for clear error. See United States v. Tompkins, 130 F.3d 117, 120–21 (5th Cir. 1997). We look to (1) whether the consent was voluntary and (2) whether it was an independent act of free will. See United States v. Jenson, 462 F.3d 399, 406 (5th Cir. 2006). The voluntariness inquiry turns on the evaluation of six factors, no single one of which is dispositive. Shabazz, 993 F.2d at 438.

Our review of the testimony and the videotape persuades us that the district court did not clearly err in determining that the consent was voluntary. There was no evidence that Trooper Magana threatened Huerta if he did not consent. Huerta was cooperative and was not handcuffed or under arrest. It is unlikely that he believed that the money would be found given its location. These factors weigh in favor of voluntary consent. Id. Further, there appears to be no reason to question Huerta's developmental level given his demeanor on the videotape, although the record is silent regarding specific evidence and findings regarding education and intelligence.

Huerta was likely not free to leave while the license check was being conducted, which could militate against a finding of voluntariness. See id. at 438. Further, there was no evidence that Huerta was aware of his right to refuse consent. However, that is not fatal to a finding of voluntary consent. See Schneckloth v. Bustamonte, 412 U.S. 218, 248–49 (1973). In sum, we find no clear error in the district court's conclusion that Huerta's consent to search was voluntary. Further, the search did not exceed the scope of Huerta's general

consent.  See United States v. Mendoza-Gonzalez, 318 F.3d 663, 667 (5th Cir. 2003).

Huerta's argument that his consent was not an independent act of free will because it was the product of the unlawful detention is without merit given our conclusion that the detention was not unlawful.  Accordingly, the judgment of the district court is AFFIRMED.