IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 5, 2008

Charles R. Fulbruge III
Clerk

No. 08-30155

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

ENRIQUE GURROLA, JR.

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Louisiana

Before KING, DENNIS, and ELROD, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Enrique Gurrola, Jr. ("Defendant") appeals the district court's denial of his motion to suppress evidence of drugs found in his vehicle. The district court denied Defendant's motion based on factual findings that the evidence was discovered through a consensual encounter with the police during which Defendant consented to a search of his vehicle. Because these findings were not clearly erroneous, we AFFIRM for essentially the reasons stated by the district court.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## FACTUAL AND PROCEDURAL HISTORY

Defendant was traveling on Interstate 20 near Bossier City, Louisiana when he was stopped by Louisiana State Trooper Brett Davis ("Trooper Davis") for following another vehicle too closely.  Defendant exited his vehicle and met with Trooper Davis near the rear of Defendant's vehicle, where Trooper Davis requested Defendant's driver's license.  Defendant's license listed a Laredo, Texas address; however, the vehicle had New York license plates.  Defendant stated he was traveling to see his daughter and son-in-law in Long Island, New York.  Trooper Davis then asked Defendant who owned the vehicle, and Defendant stated that it belonged to him.  However, the vehicle registration, which was issued from the state of New York, showed that the vehicle was registered to Daniel Saldaña of Laredo, Texas.

When questioned about the identity of the owner of the vehicle, Defendant stated that the vehicle belonged to his son-in-law, who had given it to Defendant nine or ten months earlier, but the vehicle had been registered in April 2005, only about seven months prior to the date of the stop. Trooper Davis testified that this made him suspicious because "that's a pretty big gift – you would know exactly when you got that vehicle."

Trooper Davis returned to his patrol car and ran checks on Defendant's driver's license and the vehicle. While the checks were pending, Trooper Davis returned to Defendant and again asked him about his itinerary. Defendant again told Trooper Davis that he was traveling to New York. However, he did not know which part of Long Island he was going to, despite having told Trooper Davis he had been to his daughter's house in New York "about two times."

Trooper Davis then told Defendant that the computer checks were running slowly and would take a few minutes.  A light rain began to fall, so Trooper

2

Davis suggested that Defendant sit in Defendant's vehicle while the radio and computer checks completed. Defendant did so. Trooper Davis also returned to his patrol car where he learned by radio and computer that Defendant had been arrested previously for narcotics and weapons possession. After Trooper Davis confirmed that the vehicle was not stolen and that there were no active warrants for Defendant, he exited his patrol car, and Defendant exited his car to meet him. Trooper Davis immediately returned Defendant's driver's license and issued Defendant a verbal warning for following too closely. Trooper Davis told Defendant to "be careful" and "have a safe trip." This occurred about 15 minutes after the traffic stop began.

Defendant turned away from Trooper Davis and began to return to his vehicle. Trooper Davis then called out to Defendant, "can I ask you a question before you leave." Defendant said yes. Trooper Davis explained to Defendant that the state police see a great deal of illegal contraband on the highway and asked, "can I search your car." Defendant immediately verbally consented to the search and moved to open the trunk of his vehicle, but Trooper Davis told him "not yet" and asked Defendant if he read English or Spanish better. Defendant said Spanish, and Trooper Davis presented Defendant with a Spanish version of the Louisiana Consent to Search Form and explained that the form gives Trooper Davis the right to search Defendant's car and that if "you don't care, I need your signature right there, okay." Defendant signed the form and handed it back to Trooper Davis.

While Defendant was signing the form, two other troopers, Trooper Nash and Trooper Harris, arrived on the scene. Trooper Nash patted Defendant down for officer safety. Shortly thereafter, Trooper Davis received additional criminal history information from the El Paso Intelligence Center ("EPIC") confirming

Defendant's prior arrests for large quantities of narcotics and two guns in 1991, 1994 and 1995. Trooper Davis and Trooper Nash began searching Defendant's vehicle. During the search of the vehicle, the officers located what they believed was a hidden compartment inside the vehicle. They discovered the compartment by tapping on the vehicle and using a density meter. The area of the vehicle containing the manufactured compartment had been painted a color slightly inconsistent with the remainder of the vehicle, and fasteners in that area appeared to have been replaced. Trooper Davis also found what he believed to be a trap door to the hidden compartment located inside the right fender well of the vehicle.

Once the officers narrowed down the location of the hidden compartment, Defendant was advised of his Miranda rights. The officers told Defendant that they had found a manufactured compartment in the vehicle, and rather than tear up the vehicle to gain access to the compartment, the officers asked Defendant to show them how to access the compartment. Shortly thereafter, Defendant admitted that the car contained drugs and showed the officers how to access the hidden compartment. Defendant was then handcuffed and again advised of his Miranda rights, and the officers removed a large quantity of narcotics from the compartment.

Defendant was charged with one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and one count of possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1). Defendant moved for suppression of all evidence obtained following the traffic stop and subsequent search of the vehicle, arguing that his consent to search the vehicle was invalid and the product of an unlawfully prolonged detention. After a hearing on the issue, a magistrate judge issued a report and recommendation

finding that Defendant's detention was not unlawfully prolonged and that Defendant freely and voluntarily consented to the search. Thus, the magistrate recommended denial of Defendant's suppression motion. Defendant filed objections to the magistrate's report, but the district court nonetheless adopted the magistrate's report and recommendation and denied the suppression motion.

Subsequently, pursuant to an agreement with the United States, Defendant entered a plea of guilty to one charge of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and one charge of conspiracy to possess with intent to distribute various controlled substances in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. As part of his plea agreement, Defendant reserved his right to appeal the district court's denial of his motion to suppress. Following sentencing, Defendant exercised this right and appeals the court's denial of the motion.

## DISCUSSION

Defendant does not challenge the validity of his initial traffic stop; rather he contends that his motion to suppress should have been granted because the district court erred in finding: 1) that the exchange between Defendant and Trooper Davis after Trooper Davis had returned Defendant's driver's license constituted a consensual encounter, and 2) that Defendant's consent to search the vehicle was freely and voluntarily given.

"With regard to a ruling on a motion to suppress, we review the district court's factual findings for clear error and its ultimate conclusion as to the constitutionality of the law enforcement action de novo." United States v. Tompkins, 130 F.3d 117, 120 (5th Cir. 1997) (internal quotation marks and citation omitted); see also United States v. Mask, 330 F.3d 330, 334 (5th Cir.

2003). A district court's determination that an exchange with a police officer constitutes a consensual encounter, rather than a seizure implicating Fourth Amendment protections, is a factual finding reversible only for clear error. See, e.g., United States v. Butler, 988 F.2d 537, 541 (5th Cir. 1993); see also Mask, 330 F.3d at 334. Similarly, "the voluntariness of a detainee's consent to a warrantless search is a finding of fact to be reviewed for clear error." Tompkins, 130 F.3d at 119-20 (internal citation omitted). "As long as a factual finding is plausible in light of the record as a whole, it is not clearly erroneous," United States v. Huerta, 182 F.3d 361, 364 (5th Cir. 1999) (citing United States v. Alford, 142 F.3d 825, 831 (5th Cir.1998)), and "[w]e view the evidence in the light most favorable to the party that prevailed in the district court." United States v. Jones, 234 F.3d 234, 239 (5th Cir. 2000).

Applying these standards to the instant case, we find that the district court did not clearly err in finding that Defendant's exchange with Trooper Davis was a consensual encounter and that Defendant freely and voluntarily gave valid consent for the search of his vehicle.

First, the record allows for a plausible finding that after Trooper Davis returned Defendant's driver's license Defendant engaged in a consensual encounter with Trooper Davis. It is well established that a consensual encounter, which does not implicate Fourth Amendment protections, may occur following a lawful traffic stop. See, e.g., Ohio v. Robinette, 519 U.S. 33, 35 (1996); United States v. Sanchez-Pena, 336 F.3d 431, 441-42 (5th Cir. 2003). An encounter with the police is consensual "so long as a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." Sanchez-Pena, 336 F.3d at 441 (quoting United States v. Drayton, 536 U.S. 194,

202 (2002) (internal quotation marks omitted). Here, the record shows that Trooper Davis returned Defendant's driver's license, issued him a verbal warning, and told Defendant "be careful" and "have a safe trip." Further, the record reflects that Defendant, after receiving his license, did, in fact, turn away from Trooper Davis and begin to walk away.

Relying on this evidence, the district court concluded that Defendant was free to leave at this point and that the initial traffic stop had concluded. The record also shows that after Defendant began to walk away, Trooper Davis requested, "Can I ask you a question before you leave?" to which Defendant responded "Yes sir." The district court relied on this evidence to find that, after the termination of the traffic stop, Defendant engaged in a consensual encounter with Trooper Davis. Taken together, this evidence plausibly supports the conclusion that "a reasonable person would feel free to decline the officer['s] requests or otherwise terminate the encounter," and as such we cannot say that the district court clearly erred in finding that Defendant engaged in a consensual encounter with Trooper Davis. See, e.g., Sanchez-Pena, 336 F.3d at 441, 443 (holding that defendants engaged in a consensual encounter when, after receiving all their documentation back at the end of a traffic stop, they agreed to proceed to a drug checkpoint).

Similarly, record evidence supports the district court's finding that Defendant freely and voluntarily consented to the search of his vehicle. "The Fourth Amendment test for a valid consent to search is that the consent be voluntary, and [v]oluntariness is a question of fact to be determined from all the circumstances." Robinette, 519 U.S. at 40 (internal quotation marks and citation omitted); see also Tompkins, 130 F.3d at 121. Relevant factors for

determining the voluntariness of consent to a search include: "(1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found." Tompkins, 130 F.3d at 121. "Although all six factors are relevant, no single factor is dispositive or controlling of the voluntariness issue." Id (internal quotation marks and citation omitted).

Based upon the evidence in the record, these factors plausibly support the finding that Defendant's consent was voluntary. As discussed above, the defendant was engaged in a voluntary consensual encounter. Trooper Davis employed no coercive procedures to gain Defendant's consent; rather Trooper Davis simply asked if he could search the car. See Tompkins, 130 F.3d at 122 ("[C]oercive police procedures were absent, i.e., [Defendant] was not handcuffed until the search revealed the presence of [drugs], no threats or violence were used, and there was no overt display of authority . . . ."). Defendant was completely cooperative; he immediately consented to Trooper Davis's requests to "ask you a question before you leave" and "search your car." Defendant was, or should have been, aware of his right to refuse to consent because he was supplied and signed a Louisiana Consent to Search Form in the language of his choosing, and this form advised him that he could revoke the permission to search at any time. Defendant has a GED and gave no indication of sub-average intelligence. Finally, because the secret compartment containing the drugs was very well hidden, the record could support a finding that Defendant believed that no incriminating evidence would be found. Based on this evidence, the district

court did not clearly err in finding that Defendant's valid consent to search his vehicle was freely and voluntarily given.

Thus, for the foregoing reasons, we AFFIRM the district court's denial of Defendant's motion to suppress evidence. Defendant's conviction and sentence are AFFIRMED.