# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-30570
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

February 19, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

GERSON D. GUEVARA-MIRANDA,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:14-CR-164

Before HIGGINBOTHAM, ELROD, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Gerson D. Guevara-Miranda pleaded guilty to possession with intent to distribute cocaine but reserved his right on appeal to challenge the district court's denial of a motion to suppress. He renews his argument that the Government failed to prove that he voluntarily consented to the search of his vehicle that revealed the narcotics.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-30570

The Government is required to prove by a preponderance of the evidence that a detainee's consent to search was "freely and voluntarily given," which is determined from the totality of the circumstances. *United States v. Santiago,* 410 F.3d 193, 198-99 (5th Cir. 2005) (internal quotation marks and citation omitted). The reviewing court considers

> (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.

*Id.* at 199 (internal quotation marks and citation omitted). All of the factors "are relevant, but no one [factor]. . . is dispositive or controlling." *Id.*

We review the voluntariness of a detainee's consent for clear error. *United States v. Tompkins*, 130 F.3d 117, 120 (5th Cir. 1997). We find such an error only if we are "left with a definite and firm conviction that a mistake has been committed," *United States v. Scroggins*, 599 F.3d 433, 440 (5th Cir. 2010), upholding the ruling "if there is any reasonable view of the evidence to support it," *United States v. Massi*, 761 F.3d 512, 520 (5th Cir. 2014) (internal quotation marks and citation omitted). We view the evidence in the light most favorable to the prevailing party and are particularly deferential where the district court "had the opportunity to observe the demeanor of the witnesses." *United States v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005) (internal quotation marks and citation omitted).

Guevara-Miranda contends primarily that his consent was involuntary because a language barrier between him and the state trooper who conducted the search weighs several of the factors in his favor. Specifically, he argues that the use of English by the trooper, Christopher Wright, was coercive

2

because of the language barrier; that Guevara-Miranda merely "acquiesced" to Wright's hand signals and did not "cooperate" with his commands in English because Guevara-Miranda could not understand them; and that the Government failed to show that he was aware of his right to refuse consent because there was no evidence that he could read the consent form written in Spanish, no evidence of prior experience with the criminal justice system, and no evidence of his educational level or intelligence.

The claim that Wright's use of English was coercive is inconsistent with the type of coercive police conduct we have recognized in the context of obtaining a detainee's consent to search. *See, e.g., Tompkins*, 130 F.3d at 122 (describing coercive police conduct to include placing the detainee in handcuffs, using threats or violence, or making an otherwise "overt display of authority"). Guevara-Miranda does not challenge the magistrate judge's findings, made after observing Wright's testimony and the recording of the stop, that Wright "was not overbearing" and that he "conducted himself in a professional manner throughout the encounter." Nor does Guevara-Miranda cite authority for his claim that it is coercive for law enforcement to use English where a language barrier is detected. We conclude that the Wright's use of English was not coercive.

Moreover, the record belies Guevara-Miranda's allegations concerning the language barrier and indicates that he was able to understand Wright's basic instructions and inquiries in English. For example, when Wright asked where Guevara-Miranda was going, he responded in English that he was travelling to Mississippi to visit his brother in the hospital. Although he had difficulty answering follow-up questions about the details of his travel plans, the difficulty was consistent with that of a suspect who is struggling to provide details of a cover story. The record shows that he moved to the United States

approximately eight years before the stop,[1] suggesting a sufficient length of time to understand basic phrases in English.

Likewise, the record belies Guevara-Miranda's claim that there was no evidence that he could read the consent form in Spanish and thus no evidence that he understood his right to refuse consent.  Guevara-Miranda informed the probation officer that "he completed the equivalent of sixth grade" in Honduras, which indicates that he can read in Spanish.  He does not dispute that he responded affirmatively when Wright asked him if he could read the form.  Nor does he dispute that, when Wright instructed him to read the form and to sign it only if he agreed with it, he immediately responded, "okay."  He also fails to challenge the magistrate judge's description of the video as depicting him "read[ing] the form, in earnest," and "nodding in apparent agreement as he pored over the consent form" before he signed it.  He even acknowledges in his brief that the recording shows his eyes moving back and forth across the form.

Considering the entirety of the record, which must be viewed in the light most favorable to the Government, Guevara-Miranda's arguments concerning the language barrier do not leave a definite and firm conviction that a mistake was made.  *See Pack*, 612 F.3d at 347; *Scroggins*, 599 F.3d at 440; *Gibbs*, 421 F.3d at 357.  To the extent he advocates for the adoption of a per se rule that a detainee's consent is involuntary whenever there is a language barrier unless there is evidence that he was able to read and understand the written consent form, we need not reach the issue because he fails to show that the district court clearly erred in finding that he read the form and was aware of his right to refuse consent.

---

[1] Guevara-Miranda provided this information to the probation officer, who included it in the presentence report.  We may "affirm the district court's decision on any basis established by the record."  *United States v. Pack*, 612 F.3d 341, 347 (5th Cir. 2010).

No. 15-30570

Guevara-Miranda also contends that it was coercive that Wright sought his consent while in possession of his passport, standing beside him while another trooper stood between Guevara-Miranda and his car. He does not, however, challenge the findings by the magistrate judge that the other trooper stood behind Guevara-Miranda only "briefly before moving away" and that the presence of two officers on the scene was minimized because Wright alone conducted all of the questioning. We conclude that, under the circumstances, the troopers' actions were not coercive. *See Tompkins*, 130 F.3d at 122 (providing examples of coercive police conduct).

Finally, Guevara-Miranda emphasizes that he was not free to leave because he lacked a driver's license and that he must have known that the drugs would be found during the search because they were easily accessible. "[K]nowledge that incriminating evidence would be found does not necessarily weigh against a finding of voluntary consent," as Guevara-Miranda "might have consented in the hope that his cooperation would result in more favorable treatment." *Tompkins*, 130 F.3d at 122. It is plausible here that the presence of a canine unit convinced Guevara-Miranda that the discovery of the narcotics was inevitable and encouraged him to cooperate to obtain more favorable treatment. However, even if both of these factors weigh in his favor, the two factors alone are not determinative.

Although Guevara-Miranda disagrees with the district court's weighing of the six factors, he has not overcome the particular deference owed to the district court's finding that he voluntarily consented to the search. *See Gibbs*, 421 F.3d at 357. Because there is a reasonable view of the evidence that supports the finding of voluntary consent, the judgment of the district court is AFFIRMED. *See Massi*, 761 F.3d at 520.

5